**Arrelious GREGG, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12406.**

District of Columbia Court of Appeals.

Submitted June 8, 1978.

Decided Nov. 13, 1978.

Donald F. Rosendorf, Washington, D. C., appointed by the court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, Peter E. George, Theodore A. Shmanda and Estelle D. Kumar, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KELLY and GALLAGHER, Associate Judges.

KELLY, Associate Judge:

Appellant's pro se motion to vacate sentence pursuant to D.C.Code 1973, § 23–110 was denied by the trial court without a hearing. On the specific facts of this case, we affirm.

I

Appellant, after conviction on a plea of guilty to armed robbery, received an adult sentence of ten to thirty years. On appeal, this court affirmed the discretion of the trial judge to immediately impose an adult sentence despite recommendations by government counsel and the presentence report that a Youth Act evaluation be conducted pursuant to 18 U.S.C. § 5010(e) (1970).[1]

In the present collateral attack upon that sentence, appellant raises a claim that was mentioned neither at the trial level nor in his direct appeal. The motion to vacate alleges that trial counsel had promised appellant that he would be sentenced under the Federal Youth Corrections Act,[2] pre-

---

1. *Gregg v. United States* (No. 10618, Dec. 3, 1976), an unpublished Judgment.

2. 18 U.S.C. § 5005 *et seq.* (1970).

sumably after discussion with the prosecution and the trial judge. Thus appellant argues, his plea was not voluntary and his contentions to that effect should have been aired at a hearing before the denial of his motion to vacate. *See Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

Appellant's pro se motion, made under oath, alleges, *inter alia*:

Petitioner entered a plea of guilty to one (1) count Arm Robbery (*sic*) after petitioner's counsel made a promise that he would be sentenced under the Federal Youth Correctional Act.

(A). The petitioner was led to believe and did believe, by Mr. Saccardi, that he had talked the case over with the District Attorney and Judge, and that if the petitioner would plea guilty, that he would be sentenced under the Federal Youth Correctional Act. This conversation was witnessed by others and was also told to petitioner's girlfriend by counsel.

(B). The petitioner believing that he was going to be sentenced under the FYCA, allowed himself to be pled guilty to the charge of Arm Robbery (*sic*), and was shocked by the court with a 10–30 year sentence.

(C). The petitioner was promised by his Attorney, who had consulted presumbly (*sic*) with the Judge and D.A., that he was going to be sentenced under the FYCA, and therefore because of this unkept bargain, he is entitled to relief in this court.

(D). The petitioner is aware of the fact that he was questioned by the court prior to sentencing, but as he thought he was only going to be sentenced to a FYCA, and had been instructed to answer the questions, so that the Court would accept the guilty plea, this fact does not preclude him from raising this matter especially since he was not given the promised sentence by the Court.

The interests of justice and proper recognition of promises made in connection with "plea bargaining" require that the judgment be vacated and that the case be remanded to the court for further consideration as to whether the circumstances require only that there be specific performance of the agreement on the plea (in which case petitioner should be resentenced by a different Judge). . . .

After the trial judge denied this motion, appellant brought this appeal, maintaining that the statute and the case law entitled him to a hearing at which his case would be tested according to standards similar to those appropriate to a motion for summary judgment. *See Blackledge v. Allison, supra* 431 U.S. at 80–82, 97 S.Ct. 1621.

## II

Appellant's claim must be assessed in accordance with D.C.Code 1973, § 23–110.[3] In several recent cases, this court has

---

3. D.C.Code 1973, § 23–110(a)–(c) provides:

(a) A prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to collateral attack, may move the court to vacate, set aside, or correct the sentence.

(b) A motion for such relief may be made at any time.

(c) *Unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief,* the court shall cause notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that (1) the *judgment was rendered without jurisdiction,* (2) the *sentence imposed was not authorized by law or is otherwise open to collateral*

discussed the standards for deciding under what circumstances a prisoner who moves for a vacation of sentence is entitled to a hearing. *See Pettaway v. United States,* D.C.App., 390 A.2d 981 (1978); *Gibson v. United States,* D.C.App., 388 A.2d 1214 (1978); *Johnson v. United States,* D.C.App., 385 A.2d 742 (1978); *Session v. United States,* D.C.App., 381 A.2d 1 (1977); *Hurt v. St. Elizabeths Hospital,* D.C.App., 366 A.2d 780 (1976); *Atkinson v. United States,* D.C. App., 366 A.2d 450 (1976). We may also draw upon federal court interpretations of 28 U.S.C. § 2255 (1970), "which is substantially identical" to § 23–110. *Gibson v. United States, supra* at 1215. *See Swain v. Pressley,* 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977).

The discussions in *Pettaway* and *Gibson* demonstrate that these cases indicate three categories of claims which do not merit hearings.[4] First, "palpably incredible" claims can be summarily dismissed, *Blackledge v. Allison, supra,* 431 U.S. at 76, 97 S.Ct. 1621; *Machibroda v. United States, supra,* 368 U.S. at 495, 82 S.Ct. 510; as can those claims which cannot "withstand initial checking for verity, or at the least, the probability of verity." *Session v. United States, supra* at 2. Second, the trial court may dismiss those claims which, even if true, would not entitle the movant to relief. *Gibson v. United States, supra* at 1217; *Atkinson v. United States, supra* at 452. Finally, "vague and conclusory" allegations do not require a hearing. *Blackledge v. Allison, supra,* 431 U.S. at 67, 97 S.Ct. 1621; *Session v. United States, supra* at 2; *Bettis v. United States,* D.C.App., 325 A.2d 190, 196 (1974). In deciding whether any of these categories apply to this case, we must consider what "the motion and files and records of the case conclusively show." D.C.Code 1973, § 23–110(c). After doing so, we find that appellant's claim is both conclusory and conclusively disproved by the weight of the facts apparent on the record.

## III

We find appellant's allegations to be conclusory because they merely recite in a rote fashion the words of the successful petition in *Blackledge v. Allison, supra,* 431 U.S. at 68–69, 97 S.Ct. 1621. Not a single fact or phrase was added to the edited version of Allison's plea which was published in the Official Reports of the Supreme Court. To require that a new hearing be granted whenever a petitioner recites a once-successful set of words, would indeed be a mechanical form of justice. "Section 23–110 should not produce mechanical jurisprudence triggered merely by an artful allegation of facts *dehors* the record on appeal." *Gibson v. United States, supra* at 1217. The trial judge may fairly regard the "motions, files, and records" as rebutting such a plea.

In *Bettis v. United States, supra* at 193 n.1, this court recognized that the "standards applicable to a pro se motion are considerably more lax than the standards applied where counsel is involved." In applying this laxer standard, we consider the possibility that appellant really was tendered the same promises as those alleged in *Blackledge v. Allison, supra,* and that it was actual naiveté rather than "artful allegation" that led him to use precisely the wording that Allison used there. A review of the whole record here effectively rebuts this possibility.

The first fact to be noted is that appellant did enter a guilty plea in open court after a full discussion of his rights, the terms of the plea, its voluntary nature, and the discretion of the judge. Clearly, such a plea is not totally immune from collateral attack,[5] yet "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* 431 U.S. at 74, 97 S.Ct. at 1629.

---

attack, (3) there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner, resentence him, grant

a new trial, or correct the sentence, as may appear appropriate. [Emphasis added.]

4. *Pettaway v. United States, supra* at 984; *Gibson v. United States, supra* at 1216–17.

5. *See* the cases cited on p. 39 *supra.*

In *Blackledge*, the Court found that the petitioner had overcome that presumption, but in doing so it relied heavily upon the character of plea bargaining in North Carolina at the time of Allison's sentencing as "a *sub rosa* process shrouded in secrecy and deliberately concealed by participating defendants, defense lawyers, prosecutors, and even judges." *Id.* at 76, 97 S.Ct. at 1630. It further noted that there was no transcript of the plea itself, the only record being a standard printed form. And there was no record at all of the sentencing proceeding to shed light upon the veracity of Allison's allegations. The Court specifically noted recent reforms in North Carolina's plea bargaining procedures and held that "[h]ad these commendable procedures been followed in the present case, Allison's petition would have been cast in a very different light." *Id.* at 79, 97 S.Ct. at 1632.

■ The record in the present case shows very clearly the "careful explication of the legitimacy of plea bargaining, the questioning of both lawyers, and the verbatim record of their answers" which the Court commended. *Id.* Counsel for appellant and the government both discussed the plea and affirmed that there was a bargain and that its terms were that the government would drop charges on all but one count if defendant pled guilty. This discussion was carried on in the presence of the appellant, and his counsel then went on to state that appellant understood the discretion of the court and the rationale for the plea, mentioning in detail the "overwhelming" nature of the government's case. Counsel specifically stated that government counsel could speak either for or against allocution at the time of sentencing. The judge then clearly discussed the right to trial and the effect of a plea of guilty:

> If you enter a plea of guilty, you are liable for the sentences up to the maximum, which counsel have stated on the record here to the Court. The maximum, of course, in all of the cases is up to life imprisonment.
>
> You are placing yourself on the mercy of the Court.

The judge then specifically and individually asked the appellant whether he had been promised anything other than the dismissal of the remaining counts. Appellant replied that he had not. Finally, the government outlined its case, the judge summarized the facts necessary to sustain the count against appellant and asked him if he had done the acts. Appellant confessed that he had. At no time did appellant mentioned the bargain he now alleges.

A full transcript is also available for the sentencing. It shows that the judge again asked appellant if he had anything to say on his behalf. Appellant merely said he was sorry and again acknowledged his guilt. The judge declared the sentence of ten to thirty years and immediately reminded the defendant of his right to appeal. On that appeal, the appellant challenged the discretion of the court, but made no mention of any of the promises now alleged. They were first mentioned in the petition considered here, filed sixteen months after sentencing.

The record shows repeated statements by all parties that there was no promise similar to that alleged. Appellant personally stated that quite clearly on at least one occasion and affirmed it by implication several other times. He also passed up several opportunities to assert what he now alleges. He asserts no new evidence to counter the facts present in the record. His unsupported allegation is, in and of itself, insufficient to do so.

IV

■ We should reiterate, finally, that we are not holding that a plea of guilty made and transcribed in open court cannot be subject to a later collateral challenge. What we do hold is that where the trial judge has done everything possible to make clear the rights, implications, and voluntary nature of appellant's plea, the appellant must allege specific facts which explain away the presumptive validity of that plea. Because of the conclusory nature of its recitation of the *Blackledge* litany, and because its allegations conclusively fail to overcome

the weight of the records which the statute has commanded the trial judge to consider, the petition of appellant was properly dismissed.

*Affirmed.*