Gary M. SYKES, Appellant,

v.

UNITED STATES, Appellee.

Nos. 87–1154, 88–1607.

District of Columbia Court of Appeals.

Submitted April 24, 1990.
Decided Jan. 28, 1991.

---

Michael R. Murphy, Washington, D.C., appointed by this court, filed a brief, for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Elizabeth Trosman, Michael D. Brittin and Kevin A. Ohlson, Asst. U.S. Attys., Washington, D.C., filed a brief, for appellee.

Before BELSON and SCHWELB, Associate Judges, and MACK, Senior Judge.

SCHWELB, Associate Judge:

Following a jury trial, Gary M. Sykes was convicted of distribution of heroin and possession of heroin.[1] D.C.Code § 33–541(a)(1) (1988). Sykes filed a post-trial motion to vacate, set aside or correct his sentence pursuant to D.C.Code § 23–110 (1989). The trial judge denied the motion without a hearing. In these consolidated appeals from the judgment of conviction and the post-trial order, he argues that he was denied the effective assistance of counsel at trial and that the trial judge should have held a hearing on his § 23–110 motion. We affirm.

I

The evidence against Sykes consisted essentially of the testimony of Metropolitan Police Department Officers Gerald Awkard, Victor Graves, and Joseph M. Zovak. Officer Awkard testified that on November 13, 1986, while operating undercover, he approached a corner known for narcotics activity and asked if "anybody had anything." According to Officer Awkard, Sykes responded: "Come on. I've got it." The two men walked to a small "airway" between some apartment buildings. Officer Awkard testified that Sykes asked him whether he was a police officer; Awkard

responded that he was not. Sykes then handed Officer Awkard a small plastic bag containing white powder, which was later determined to contain a usable amount of heroin. Officer Awkard handed Sykes twenty-five dollars in prerecorded funds. The prerecorded bills were never recovered.

Officer Awkard then returned to his car and broadcast a look-out for Sykes based on his physical description and clothing. Meanwhile, Officer Graves, who had observed Officer Awkard meet with Sykes, but who had not seen the alleged transaction between the two, watched Sykes exchange something with a woman who was wearing a green dress. Shortly thereafter, this woman left the scene with another man.

Within minutes, the arrest team arrived in an unmarked car and, true to its nickname,[2] "jumped out" of the vehicle to apprehend the suspect. Officer Zovak, a member of the team, approached Sykes and observed him drop an object in the grass. Officer Zovak immediately retrieved the object, which consisted of three plastic packets containing what later proved to be heroin in a usable amount. It was these three packets that led to the PWID charge against Sykes and his ultimate conviction of simple possession of heroin.

Sykes testified in his own defense. He stated that Officer Awkard had indeed solicited him for drugs. He claimed that he had responded "in a disrespectful manner" because he knew Officer Awkard was the same police officer to whom he had sold cocaine four months earlier. The prior sale had resulted in his arrest and, following his plea of guilty, in a probationary sentence from a Superior Court judge. According to Sykes, a woman named Audrey Smith was standing with him at the time. Sykes told Ms. Smith that Awkard was a police officer, but Ms. Smith nevertheless proceeded to sell drugs to Officer Awkard. Sykes denied that he was the seller, that he pos-

---

1. Sykes was acquitted of possession of heroin with intent to distribute it (PWID). The possession of heroin of which he was convicted was a lesser included offense of the PWID charge.

2. An arrest team is known on the street as the "jump-out squad."

sessed any heroin, or that he threw packets of it to the ground. He claimed that he had been falsely charged in retaliation for "blowing" the officer's "cover."

## II

In his post-trial motion, which was filed on his behalf by his present counsel, Sykes' principal contention was that his trial attorney was ineffective because he failed to interview Ms. Smith or to call her as a witness.[3] Sykes swore in an accompanying affidavit that he had provided his trial counsel with Ms. Smith's name and address in advance of trial, and that Ms. Smith

would have been able to corroborate my testimony, and establish my innocence of the charges against me. Her testimony would have refuted the police officer's testimony that I sold him drugs, which I did not.

Sykes further stated that the trial attorney told him that no one would believe Ms. Smith's testimony and that "having her testify would not help my case."

The trial judge issued a written order denying the motion without a hearing. Relying on *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the judge noted that it was incumbent upon Sykes to establish both deficient performance on the part of his counsel and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. She held that Sykes had failed to sustain his burden on either issue.

With respect to the deficient performance prong, the judge noted that whether to call a witness for the defense is a tactical decision which is to be made by the defense attorney, and that

in light of the availability of a Fifth Amendment privilege to [Ms. Smith], the attorney, no doubt, decided it would not be useful or provident to call her.

She pointed out that if Ms. Smith had invoked her privilege against self-incrimination, this would not have corroborated the defendant's innocence, for the testimony would have been taken out of the presence of the jury. *Davis v. United States*, 482 A.2d 783, 785 (D.C.1984). The judge stated that "even if counsel's strategy was improvident," it would not necessarily amount to ineffective assistance of counsel unless, taken as a whole, the trial was a "mockery of justice." *Terrell v. United States*, 294 A.2d 860, 864 (D.C.1972).

In regard to the prejudice prong, the judge noted the strength of the evidence against Sykes, as well as the availability of Ms. Smith's Fifth Amendment privilege. She held that "on this record it cannot be said that any omission by counsel otherwise would have produced a different result."

## III

We agree substantially with the reasoning of the trial judge. We assume for purposes of this appeal that, if a hearing had been held, Sykes' trial attorney would have testified that he did not interview Ms. Smith. Although it would have been judicious on the part of trial counsel at least to attempt to obtain Ms. Smith's version,[4] it does not inexorably follow that his failure to do so was sufficient to establish ineffective assistance in the constitutional sense.

---

**3.** Sykes also claimed that his trial attorney attempted to pressure him to plead guilty and that he did not adequately prepare for trial. Since Sykes did not plead guilty, he was not prejudiced by the alleged pressure. The allegation that the attorney did not prepare adequately is general and vague, except for the specific contention regarding his failure to interview Ms. Smith or to call her as a witness.

**4.** Persons implicated in drug distribution have been known voluntarily to admit their own guilt in order to avoid an alleged injustice to a friend or a lover. *See, e.g. King v. United States*, 550

A.2d 348, 349–50 (D.C.1988). In *King*, however, the chivalrous individual who proposed to admit his own guilt and exculpate his inamorata co-defendant had already been identified as one of the wrongdoers, and the prosecution had presented a strong case against him which ultimately led to his conviction. In the present case, on the other hand, Ms. Smith would have been potentially incriminating herself, and opening up the possibility of imprisonment, where the government had not previously accused her of participation in the crime.

Judicial scrutiny of counsel's performance is deferential, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland, supra*, 466 U.S. at 689, 104 S.Ct. at 2065. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances," applying a heavy measure of deference to counsel's judgment. *Id.* at 691, 104 S.Ct. at 2066. Moreover, the defendant must show that his attorney made errors so serious that he was not functioning as the "counsel" guaranteed him by the Sixth Amendment. *Id.* at 687, 104 S.Ct. at 2064.[5]

▮ A defense attorney has a professional obligation to interview witnesses who have knowledge of a crime. *Miller v. United States*, 479 A.2d 862, 870 (D.C. 1984); *cf. Ramsey v. United States*, 569 A.2d 142, 147 (D.C.1990). It would have behooved Sykes' counsel to attempt to do so in this case. Ms. Smith, however, was no ordinary witness. The possibility that she would have "confessed" to the serious crime of distribution of heroin, and would have thereby voluntarily made herself vulnerable to the possibility of prosecution, conviction, and incarceration, was surely remote. On the other hand, the likelihood that upon being interviewed Ms. Smith would have denied having been the perpetrator of the charged offenses (either falsely, as Sykes contends, or truthfully, as the government maintains), or would have invoked her constitutional privilege against self-incrimination, was substantial. *See, e.g., Wilson v. United States*, 558 A.2d 1135 (D.C.1989).[6]

In *McAdoo v. United States*, 515 A.2d 412 (D.C.1986), McAdoo alleged that he had been denied the effective assistance of counsel because his attorney had failed to heed his plea to interview a "contract killer" who, according to the talk on the street, may have been responsible for the death of the victim of the homicide which had led to McAdoo's prosecution. This court rejected McAdoo's contention, noting that "[g]iven the implausibility of the 'contract killer' admitting his own guilt to exonerate McAdoo, counsel's judgment that an interview with this person was not warranted was certainly 'within the wide range of reasonable professional assistance.'" *McAdoo, supra*, 515 A.2d at 423 (citing *Strickland, supra*, 466 U.S. at 689, 104 S.Ct. at 2065); *see also Terrell, supra*, 294 A.2d at 864. The same rationale holds true in the case at bar. Given the improbability of the notion that Ms. Smith would have admitted her own guilt to exonerate Sykes, counsel's decision not to interview her was arguably within that wide range of "reasonable professional assistance" to which the court referred in *McAdoo*, and therefore did not constitute ineffective assistance of counsel.

▮ We need not decide, however, whether what we regard as, at least, a most unfortunate omission on the part of Sykes' trial attorney was sufficient to meet the deficient performance prong of *Strickland*. Assuming without deciding that it was, we are satisfied that Sykes has not satisfied the prejudice prong.[7] If Ms. Smith had been willing to provide exculpatory evidence, as Sykes implies, then Sykes' present attorney could surely have secured an affidavit from her.[8] Counsel did not do

---

**5.** This standard roughly parallels the "mockery of justice" test which the trial judge quoted from *Terrell, supra*, 294 A.2d at 864.

**6.** Prosecution of Ms. Smith without the drugs might have been difficult, but certainly not impossible. *See, e.g., Bernard v. United States*, 575 A.2d 1191, 1193–95 (D.C.1990). If she were to invoke her privilege against self-incrimination, it is unlikely that a judge could overrule the claim on the ground that the risk of prosecution was insubstantial. *Cf. Jaggers v. United States*, 482 A.2d 786, 793 (D.C.1984) (per curiam).

**7.** We do not suggest, however, that it is ordinarily acceptable for an attorney to refuse even to interview a witness on the basis of the attorney's unexplained certitude that she would not be credited.

**8.** It would have been a good deal easier for Ms. Smith to provide an affidavit than to testify. In an affidavit, she could simply have stated that she was on the scene when the offense was committed and that Sykes did not do it but someone else did. If called to the witness stand, however, she could not so limit her testimony. On cross-examination, the prosecution would be

so, however, and the absence of such an affidavit is significant. As we stated in *McAdoo, supra,* 515 A.2d at 423,

> McAdoo's counsel at the post trial hearing effectively conceded [that trial counsel's failure to call the alleged contract killer was reasonable] when he declined the trial court's invitation to produce this witness at the hearing; counsel acknowledged he "wouldn't expect a person to come in and admit to" the murder. Again, McAdoo's failure to produce this witness or any evidence as to this proposed testimony, precludes the finding of professional deficiency, let alone prejudice, required by *Strickland.*[9]

If it is improbable that Ms. Smith would have provided exculpatory testimony, *McAdoo, supra,* then it is likewise improbable that an attempt by trial counsel to interview her or to call her as a witness would have changed the result of the trial. The trial judge obviously viewed the government's case as a strong one, and if Ms. Smith had been presented as a witness to corroborate Sykes' testimony, the jury would have been required to believe that Ms. Smith sold heroin to Officer Awkard in spite of a warning from Sykes that the ostensible buyer was a policeman.[10] This notion seems as alien to human nature and to common sense as the supposition that, if called, Ms. Smith would have agreed to take the blame for the crime, thereby exposing herself to possibilities which in the worst scenario might eventually have brought her a one-way ticket to the penitentiary. It is not inconceivable that the

events occurred in a manner consistent with this version, but the trial judge obviously did not think that the chances that they did were appreciable. Neither do we. Accordingly, we conclude that Sykes has not made a colorable showing of prejudice.

## IV

■ The more difficult question is whether the judge was required to hold a hearing on Sykes' motion. Section 23–110(c) provides that "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon." In light of that statutory mandate, we have held that there is a presumption that a trial court presented with a § 23–110 motion alleging ineffectiveness of defense counsel should conduct a hearing. *See, e.g., Ramsey, supra,* 569 A.2d at 147. To hold such a hearing is "especially appropriate where the ineffectiveness concerns facts *dehors* the original record." *Gibson v. United States,* 388 A.2d 1214, 1216 (D.C.1978) (per curiam); accord, *Miller, supra,* 479 A.2d at 869–70. No hearing is required, however, if the specifications of the motion are "patently frivolous on their face," *Gibson, supra,* 388 A.2d at 1217, or "palpably incredible," or fail to withstand "initial checking for verity, or at the least, the probability of verity." *Gregg v. United States,* 395 A.2d 36, 39 (D.C.1978) (internal quotation marks omitted).

entitled to ask her who the seller was, notwithstanding her invocation of the privilege against self-incrimination. *See Johnson v. United States,* 318 U.S. 189, 195, 63 S.Ct. 549, 552, 87 L.Ed. 704 (1943); *Fountain v. United States,* 384 F.2d 624, 627 (5th Cir.1967), cert. denied, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968). If she refused to answer, any testimony on direct examination tending to exculpate Sykes might be subject to a motion to strike. *Fountain, supra,* 384 F.2d at 628.

We need not and do not decide whether the result here would be different if Sykes had produced a meaningful exculpatory affidavit from Ms. Smith, or if he were able to do so in the future. No such facts are before us.

9. In *McAdoo,* the court did hold. a hearing on the defendant's § 23–110 motion, primarily in

connection with allegations other than the one relating to counsel's failure to interview the alleged contract killer with purportedly exculpatory potential. Since we assume, for purposes of this appeal, that Sykes' trial counsel would have testified as did the attorney in *McAdoo,* and would have acknowledged that he did not interview Ms. Smith, any distinction from *McAdoo* evaporates.

10. Sykes' case also seems to rest on the notion that even though he was unsuccessful in blowing Officer Awkard's cover, at least *vis-a-vis* Ms. Smith, Awkard and other officers nevertheless falsely accused him because he had identified Awkard.

 On this appeal, the defendant must show that the trial judge abused her discretion in failing to conduct an evidentiary hearing. *United States v. Baynes*, 622 F.2d 66, 68 (3d Cir.1980) and authorities there cited; *see also Morris v. United States*, 101 U.S.App.D.C. 296, 298, 248 F.2d 618, 620 (1957).[11] This rule is a salutary one, for the trial judge, who has seen the defense attorney in action and watched the evidence unfold, is in a far better situation than an appellate court to determine whether there is any appreciable possibility that a hearing could establish either constitutionally defective representation or prejudice to the defendant in the *Strickland* sense.

 In case of doubt, a trial judge should ordinarily hold a hearing with respect to allegations of ineffective assistance. It might well have been wise to do so in this case. Nevertheless, we conclude that on these particular facts, where Sykes failed to produce an affidavit from Ms. Smith, where Ms. Smith would have had to risk incriminating herself to assist Sykes, and where the defense case depends on a jury's crediting that Ms. Smith sold drugs to Officer Awkard after being warned by Sykes that Awkard was a policeman,[12] the trial judge acted within her discretion in concluding that a hearing could serve no useful purpose.

We need not and do not decide whether a hearing would have been required if Sykes' § 23–110 motion had been accompanied by a meaningful exculpatory affidavit by Ms. Smith. That would, of course, be an entirely different case. But that is not the record before us. Unless courts are to presume that lawyers are incompetent, the trial judge could surely be confident that the second attorney, who was claiming that the first attorney's failure to interview Ms. Smith constituted ineffective assistance of counsel, would not be guilty of the same

omission himself. Absent any indication that Ms. Smith could corroborate Sykes' remarkable contention that she was ready to take the blame and exculpate him, the judge could therefore reasonably conclude with the necessary assurance that nothing would happen at a hearing which would establish the probability that but for trial counsel's allegedly sub-standard representation, Sykes would have been acquitted.

### V

For the foregoing reasons, the judgments appealed from must be and each is hereby

*Affirmed.*

MACK, Senior Judge, dissenting:

The trial court has meticulously and correctly stated the law with respect to the burden that appellant had in establishing that the performance of his trial counsel was deficient and that the deficient performance prejudiced his defense. Having done so, without granting a hearing as to matters dehors the record, the court has effectively foreclosed to appellant the opportunity to meet that burden. I suggest consideration of the following scenario: a prisoner, in a post-trial motion for collateral relief, alleges that in preparation for trial he gave his trial counsel the name and address of a key eyewitness to the incident forming the basis for his conviction, that he told trial counsel that the witness would corroborate his version of the facts and exonerate him of the charges, that he requested that trial counsel interview and subpoena the witness, and that trial counsel failed to do so because in counsel's view, no one would believe the witness. Do these facts, without more, raise a question as to whether trial counsel was properly representing the client? On a record lacking any statement by counsel as to why the witness was not produced, and casting

---

**11.** In *Baynes* and in *Morris*, the courts were construing 28 U.S.C. § 2255 (1971 & 1990 Supp.), the federal counterpart of Section 23–110. The two statutes are substantially identical, and in construing Section 23–110 we have turned for guidance to interpretations of 28 U.S.C. § 2255 by the federal courts. *Neverdon*

*v. District of Columbia*, 468 A.2d 974, 975 (D.C. 1983).

**12.** In the hypothetical case postulated by our dissenting colleague, these rather unusual circumstances are missing.

no light whatsoever on the matter, can we say with certainty what might have happened if the witness had been produced? Can we say that there was no witness, that if there were, the witness would not have testified, or that even if the witness had testified, the jury would have rejected the testimony? Would we, or any court, be in a posture to say that the movant had not been prejudiced, or to dispose of the motion on the ground that the movant had shown no prejudice?

This recitation is more than a scenario; it is basically the instant case bereft of the inferences that we are drawing from the character of a neighborhood and the people who may frequent it. Here, the trial judge denied a brief inquiry, in my opinion mandated by the language of § 23–110, *see infra,* that would have put to rest important yet unanswered questions. Yet, appellant's critical allegation, that his counsel failed to contact a key witness, is neither vague, nor conclusory, nor wholly incredible and thus dictates a hearing. *See Gibson v. United States,* 388 A.2d 1214, 1216 (D.C.1978). Indeed, testimony from a police officer, as well as appellant, tells us that a female witness was at the scene of the crime. We know that the witness was not at trial. We do not know whether appellant's allegation, that he requested counsel to contact the witness and that counsel refused to do so, is true or false. We do not know whether appellant's further allegation—that the witness would have corroborated his testimony—is true or false, or whether, if true, would merit relief. Neither lawyers nor the courts can pinpoint with any degree of accuracy the proclivities of a particular individual to act or not to act in self-interest (or against self-interest) under varying circumstances. That is why the statute here in question requires a hearing, with the opportunity for testimony and cross-examination, with respect to questions not answered on the face of the record. Unless we resist the tendency to make general assumptions as a result of our experience with respect to the so-called "criminal milieu," we run the risk of weakening our own statutory and constitutional protections.

In its brief the government argues that "it is *highly implausible* that Ms. Smith [the witness] would have corroborated appellant's testimony, and that even if she did, there is *no reasonable probability* that the outcome of the trial would have been different." (Emphasis added.) In like vein, the trial court in holding that the facts did not warrant a new trial or a post-conviction hearing, reasoned that "in light of the evidence against appellant and the availability of a Fifth Amendment privilege to [Ms. Smith], the attorney, *no doubt,* decided it would not be *useful* or *provident* to call her." (Emphasis added.) In this court, my colleagues add a new dimension to the speculation. In purported reliance on the case of *McAdoo v. United States,* 515 A.2d 412 (D.C.1986), the majority speaks of the "*improbability* of the notion that Ms. Smith would have admitted her own guilt to exonerate Sykes." (Emphasis added.) The majority can gain no support from *McAdoo* for the basic reason that the movant in that case was granted a hearing.[1]

By contrast here, the trial court, in denying a hearing, merely presumed that a lawyer made a legitimate, tactical decision not to contact or call a witness at the request of his client. Now my colleagues add to the speculation by presuming that the witness would not have been cooperative, that the witness would have been required to incriminate herself,[2] and that in any event lawyers are competent! (I dare not question this last proposition except to suggest

---

**1.** McAdoo's counsel testified at that hearing where he declined the trial court's invitation to produce an alleged contract killer and conceded that trial counsel's failure to do so was reasonable. *McAdoo, supra,* 515 A.2d at 412. My colleagues in the instant case say that *McAdoo* is controlling because "we assume, for purposes of this appeal that Sykes' trial counsel would have testified as did the attorney in *McAdoo* and would have acknowledged that he did not interview Ms. Smith."

**2.** If one is to believe the evidence produced at trial by the government, this assertion does not follow as a matter of course. Moreover, we are simply unaware of what, if anything, a contact with the witness would have produced.

that this is why the law requires a hearing in this case. *See Ramsey v. United States,* 569 A.2d 142 (D.C.1990), cited by the majority.) The mandate of § 23–110 is clear: "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." D.C.Code § 23–110 (1989 Repl.).

The problem with the majority's reasoning is that it has put the cart before the horse. In finding that the outcome of the case would have been no different under the prejudice prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it is carving out any exception to the mandate of § 23–110. It has stopped short of holding that the *specifications* of the motion are "patently frivolous" or "palpably incredible." It could not so hold on the face of the record because, with respect to those specifications, there is no record. We have repeatedly emphasized that, when a post-trial motion alleges ineffective assistance of counsel, a hearing is required, "where the ineffectiveness concerns facts *dehors* the record." *See Shepard v. United States,* 533 A.2d 1278, 1283 (D.C.1987), *citing Gibson, supra,* 388 A.2d at 1216; *see also Miller v. United States,* 479 A.2d 862, 869–70 (D.C. 1984). Only recently we re-emphasized the importance of developing a pertinent factual record where an appellant has raised a claim of ineffective assistance of counsel. *See Simpson v. United States,* 576 A.2d 1336, 1338–39 (D.C.1990); *see Johnson v. United States,* 585 A.2d 766 (D.C.1991).

I would remand the record for a hearing and appropriate findings.