Johnny Ray SOUTHALL, Appellant,

v.

UNITED STATES, Appellee.

Nos. 95–CO–1007, 96–CO–1858.

District of Columbia Court of Appeals.

Submitted Oct. 9, 1997.

Decided July 30, 1998.

David Jonathan Sitomer, filed a brief for appellant in No. 95–CO–1007.

Rufus W. McKinney, Jr., filed a brief for appellant in No. 97–CO–1858.

Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Stuart G. Nash, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge,
FARRELL and KING, Associate Judges.

WAGNER, Chief Judge:

Appellant, Johnny Ray Southall, was indicted for first degree burglary (D.C.Code § 22–1801(a) (1996)), aggravated assault while armed (shovel) (D.C.Code §§ 22–504.1, –3202), mayhem while armed (shovel) (D.C.Code §§ 22–506, –3202), and threatening to injure a person (D.C.Code § 22–2307). He entered pleas of guilty to the lesser-included offenses of second degree burglary and aggravated assault, and the government dismissed the remaining charges at the time of sentencing. The trial court sentenced Southall to consecutive terms of incarceration of four to twelve years on the burglary count and three to nine years on the aggravated assault count. The court also ordered Southall to pay restitution to the victim in the amount of $2015.75 "to be taken from any and all earnings while incarcerated," designed to "compensat[e] ... the victim for her pain and suffering and medical expenses." In his direct appeal from the trial court's order denying his motion to reduce sentence, Southall argues that the trial court erred in imposing a sentence which included a restitution order to compensate the victim, in part, for pain and suffering and in requiring that all of his income be used to discharge the restitution obligation. In his collateral appeal, Southall challenges the trial court's denial of his motion to withdraw guilty plea. We affirm the trial court's decision, except that we remand for resentencing consistent with this opinion.

## I. *Procedural Background*

Southall was charged originally by complaint on October 24, 1994, with first degree

burglary while armed. Following a preliminary hearing on October 26, 1994, he was held without bond pursuant to D.C.Code § 23–1322(b).[1] On November 17, 1994, his original attorney was granted leave to withdraw. Michael Frucci was appointed trial counsel, and a status hearing was set for December 27, 1994. At the status hearing, the case was continued for a further status hearing, and a tentative trial date was set for January 23, 1995. In the interim, on January 18, 1995, Southall was indicted in this case on the charges of first degree burglary (with intent to commit an assault), aggravated assault while armed, mayhem while armed, and threatening to injure a person. Southall was arraigned on the indictment on January 25, 1995. At the time of the arraignment, Mr. Frucci reported to the court that Southall had requested that he withdraw as counsel. After considering each of Southall's complaints about Mr. Frucci's representation, the trial court denied the request.[2] With Southall's consent, defense counsel requested, and the court granted, a continuance of the trial date until February 27, 1995.

On the scheduled trial date, defense counsel requested a continuance, contending that there was an essential eyewitness whose name Southall had not been able to provide until five days before the trial date.[3] Counsel explained further that his investigator had searched for several days, but was unable to locate the witness. Counsel represented further that Southall had given an address only the day before "where the witness might be located."[4] The court requested a proffer of the witness' expected testimony, and defense counsel proffered that

[r]ight from the beginning of the case ... Mr. Southall has told me ... that there was another individual in the room with the complaining witness and that they were involved in sexual intercourse.

That Mr. Southall came into the room and a fight ensued between him and the other man. And that in the—the complaining witness tried to get between them and in the process was injured but he didn't strike her intentionally, he didn't know if he struck her or the other gentleman.

Counsel also stated that the witness, the man in the apartment with the complainant at the time, would testify that someone else broke

---

1. D.C.Code § 23–1322(b) provides for preventive detention of an accused pre-trial who is charged with commission of a crime of violence or dangerous crime, after a hearing, if the judicial officer holding the hearing determines, based upon clear and convincing evidence, that no combination of lesser conditions as set forth in D.C.Code § 23–1321(c) will assure the accused's appearance and the safety of any other person and the community.

2. Southall's complaints at that time concerned his mistaken belief that Mr. Frucci, who was appointed on November 17, 1994, had rescheduled a status conference from December 5 to December 27, that he had not seen him between December 27 and January 5, and that he had not done enough to prepare for his case. Counsel explained that Southall had indicated that he had no witnesses and the government had not provided discovery because the case had not been indicted. Defense counsel stated that there was not much more he could do until he obtained discovery. In addition to speaking with his client at court, Mr. Frucci had met with him at the jail and at the Youth Center, and he had an investigator assigned to the case. The investigator had promised the lawyer that he would see Southall, but the investigator had not done so because he had been injured, hospitalized and had been without transportation as the result of a carjacking. In spite of the circumstances, Mr. Frucci represented that he could be ready for trial by January 30, 1995, but ultimately he and Southall agreed that he should seek a continuance.

3. At the status hearing on January 25, 1995, defense counsel had represented initially that Mr. Southall had no witnesses and that "[i]t's basically the case of his word against the complainant's word." Southall, who was involved in the colloquy with the court and counsel, did not dispute this representation. Subsequently, defense counsel indicated that there might be one or two witnesses.

4. Counsel stated:

Mr. Southall is presently incarcerated and serving a sentence under another case so there's—he says he has a lot of patience and he waives his right to a speedy trial under the Preventive Detention Statute that he has been held under.

But in all candor, Your Honor, I can do no less than ask for a continuance given the information, though late, it is incumbent upon me to follow this up to the best of my ability and therefore we are asking for a continuance and announcing not ready.

the window. Defense counsel explained that Southall had a key with which he let himself into the premises. The trial court denied the motion for continuance and called for a jury, stating: "After giving due consideration to the proffer of evidence, the Court has determined that in the interest of justice it requires that this case proceed."

At the beginning of the hearing, in response to the court's inquiry, defense counsel represented that his relationship with his client seemed fine and that Southall had not mentioned any problems when he saw him the previous day. However, after the court's denial of the request for continuance of the trial, defense counsel stated that Southall wanted him to seek to withdraw as counsel. The trial court rejected the request, stating that it had already explored those issues with him. After a forty minute recess, a venire panel was brought to the courtroom, and defense counsel then reported that Southall had agreed to accept the government's plea offer

## II. *The Direct Appeal* (Case No. 95–CO–1007)

### A.

■ Preliminarily, the government argues that the court lacks jurisdiction to entertain Southall's direct appeal, in which he challenges the restitution order, because it was filed untimely. Unless otherwise specified, a notice of appeal in a criminal case must be filed within thirty days after the entry of the order or judgment from which the appeal is taken. D.C.App. R. 4(b)(1). This time period may be extended by the trial court for a period not to exceed thirty additional days for "excusable neglect." D.C.App. R. 4(b)(3). The court has no jurisdiction to consider appeals filed outside these time limits. *Bratcher v. United States,* 604 A.2d 858, 859 (D.C.1992).

The trial court sentenced Southall on April 18, 1995, and he did not note an appeal from his sentence until July 11, 1995, which is well beyond the thirty day period prescribed by Rule 4(b)(1), and even beyond any extension of time which might have been obtained under Rule 4(b)(3). Thus, this court has no jurisdiction to review the judgment and sentence imposed on April 18, 1995. *See id.*

■ However, Southall timely filed a document questioning the restitution component of his sentence, which the trial court construed as "a motion for modification of sentence" under Rule 35, and denied in an order signed on June 8, 1995. Although the order was signed on June 8, it was not filed and mailed to the parties until June 12, 1995. The notice of appeal from that order was filed on July 11, 1995, twenty-nine days later, within the jurisdictional time limit. Southall's written submission to the trial court may properly be considered a challenge to the correctness of the restitution element of his sentence, and we hold that the denial of that motion is properly before us for review. *See* Super. Ct.Crim. R. 35(a).[5]

### B.

■ Southall argues that the trial court erred in setting a restitution amount to compensate the victim for pain and suffering. In its order denying the motion for reconsideration of sentence, the trial court stated as its reasons that the amount ordered as restitution "will serve as some compensation to the victim for her pain and suffering and medical expenses." In a criminal case, the trial court may order the convicted defendant to pay restitution, "in addition to any other sentence imposed as a condition of probation or as a sentence itself." D.C.Code § 16–711(a) (1997). The trial court has broad discretion in imposing a restitution order under the statute. *Sloan v. United States,* 527 A.2d 1277, 1290 (D.C.1987). However, we have interpreted this statute as excluding from restitution amounts any damages which are not readily measureable, such as pain, disfigurement, suffering and anguish. *Id.* "These damages are generally not properly part of a

5. Super. Ct.Crim. R. 35(a) provides that [t]he Court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

Southall's motion, having been filed within 120 days after the imposition of sentence, is timely under either provision of Rule 35(a).

criminal proceeding, but are left to a more exacting determination in a civil proceeding, where the primary purpose is compensation of the victim." *Id.* (citing *State v. Stalheim,* 275 Or. 683, 552 P.2d 829, 831 (1976)). Therefore, in providing restitution to compensate the victim for pain and suffering in this case, the trial court considered an impermissible element. To that extent the sentence was illegal and correctible by a motion under Rule 35(a). *See, e.g., Robinson v. United States,* 454 A.2d 810, 813 (D.C.1982) (Rule 35(a) motion lies to correct sentence imposed beyond court's statutory authority). Therefore, we must remand to the trial court for resentencing.[6]

### III. *The Collateral Appeal* (Case No. 97–CO–1858)

#### A.

■ In his collateral appeal, Southall challenges the trial court's denial of his post-sentencing motion to withdraw his guilty plea filed pursuant to Super. Ct.Crim. R. 32(e) and D.C.Code § 23–110(c). A motion to withdraw guilty plea after sentencing is tested under a high standard; it will be granted to prevent manifest injustice. Super. Ct. Crim. R. 32(e);[7] *Williams v. United States,* 656 A.2d 288, 293 (D.C.1995).

A guilty plea may be withdrawn after sentencing only if the defendant affirmatively establishes that the trial court's acceptance of [his or] her plea was manifestly unjust, and that the plea proceeding was fundamentally flawed such that there was a complete miscarriage of justice.

*Id.* (quoting *(Linda) Johnson v. United States,* 631 A.2d 871, 874 (D.C.1993)). Motions testing the voluntariness of a guilty plea under D.C.Code § 23–110 are subject to the same standard. *McClurkin v. United States,* 472 A.2d 1348, 1352 (D.C.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984). However, the disposition of a

motion to vacate sentence filed pursuant to § 23–110 remains subject to the hearing requirement set forth in § 23–110(c). *Id.* Our review of the record persuades us that the trial court did not err in declining to hold an evidentiary hearing on Southall's motion or in applying the manifest injustice standard in denying the motion to withdraw guilty plea.

■ Southall argues that the trial court erred in denying his § 23–110 motion to withdraw the plea without a hearing. A hearing is required on the motion unless the files and records show conclusively that the movant can establish no facts warranting relief. D.C.Code § 23–110(c); *Head v. United States,* 626 A.2d 1382, 1385 (D.C.1993), *cert. denied,* 513 U.S. 854, 115 S.Ct. 156, 130 L.Ed.2d 95 (1994) (citation omitted). Where the petitioner's allegations are vague and conclusory, palpably incredible, or even if true, warrant no relief, no hearing is required. *Id.* Southall's claims of ineffectiveness in his motion in the trial court, as the trial court determined, were vague and conclusory, and failed to assert how trial counsel was ineffective and otherwise warranted no relief.

On appeal, Southall claims that his trial counsel was ineffective in investigating the case pre-trial and in failing to seek a timely continuance of the trial date to locate a witness. He contends that the attorney failed to subpoena the witness whom Southall claims was with complainant in her home when she was assaulted. He also contends for the first time on appeal that defense counsel was deficient in that he failed to secure any statements of the witness or forensic evidence which the government might have had in order to advise him before trial.

■ In his motion in the trial court, Southall recounted what had occurred at the plea proceedings. Southall made no specific chal-

---

6. Under *Sloan,* the trial court is not precluded from awarding restitution for medical expenses if these can be readily ascertained. *Sloan,* 527 A.2d at 1290. In light of our disposition, we need not consider Southall's remaining challenge to the restitution provision because, no doubt, a different order will be entered upon remand.

7. Super. Ct.Crim. R. 32(e) provides:

A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea.

lenge that trial counsel was ineffective in his pre-trial investigation or in failing to request a continuance before the trial date. He asserted only generally "a claim of manifest injustice under his Sixth Amendment right to counsel."[8] Unlike his brief before this court, Southall did not raise in his motion in the trial court any claim that his counsel had failed to obtain witness statements, Brady[9] and Jencks[10] material or forensic evidence.[11] Such conclusory allegations do not require a hearing. McClurkin, supra, 472 A.2d at 1353. Southall's specification of claims of ineffectiveness for the first time on appeal are not properly preserved for review. It is a basic rule in our jurisprudential system that issues, points, and theories not advanced in the trial court will not be considered on appeal except in exceptional situations where a clear miscarriage of justice would result otherwise. D.D. v. M.T., 550 A.2d 37, 48 (D.C.1988) (quoting Miller v. Avirom, 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967)); see also Veney v. United States, 681 A.2d 428, 435 n. 10 (D.C.1996) (en banc). The record fails to show that Southall's claims meet the "clear miscarriage of justice" standard.

On the final scheduled trial date, defense counsel sought a continuance on the basis that, his client had informed his investigator five days earlier that he remembered the name of a witness about whom he informed him three months earlier. The investigator's efforts to locate the witness were unsuccessful. Counsel represented that only the day before had Southall provided him with another possible address for the witness, and therefore he moved for a continuance of the trial. The court denied the request after a proffer of what this witness was expected to say.[12]

To establish a claim of ineffective assistance of counsel, a party must demonstrate (1) that counsel's performance was deficient and (2) that defendant was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Given Southall's delay in providing information essential to locating the claimed witness, the incorrect address provided initially, the difficulties encountered in locating the witness in spite of the search, it cannot be said that counsel's performance was deficient as claimed, i.e., that it fell below an objective standard of reasonableness. We see no basis for concluding that counsel's assistance was deficient because he chose to try to locate the witness before seeking a continuance of the trial date. See Quallis v. United States, 654 A.2d 1281, 1282 n. 2 (D.C.1995) (citing Carter v. United States, 475 A.2d 1118, 1123 (D.C. 1984), cert. denied, 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985) ("Tactical decisions gone awry can seldom, if ever, form the basis for a finding of constitutional ineffectiveness.")) As to Southall's other claim, there is nothing in the record to suggest that counsel did not avail himself of discovery or that had he done so there was any evidence which would have aided Southall in his defense.

According to the government's proffer at the plea proceeding, Southall broke into the home of the complaining witness on October 22, 1994. At the time there was in effect an order requiring Southall to stay away from the complainant and her home in criminal case number M 9101–94 in which Southall

8. Although Southall claimed that trial counsel stated that he was not ready for trial on the trial date, he referenced as support the transcript of the proceeding on January 25, 1995, one month before the trial date finally scheduled. Counsel obtained a continuance to the February date to allow more time for preparation.

9. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

10. Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).

11. In asserting his innocence, Southall stated in the motion that the complainant's injuries were not the result of his actions, and that "there was no forensic proffer by the Government as to fingerprint or blood analysis on the shovel or the telephone receiver with which [c]omplainant was to have been allegedly struck in the head." Southall made no claim that his trial counsel had failed to seek discovery of such evidence.

12. In a pro se reply brief, Southall provides a somewhat different version of these events. However, his version is not a part of the record of the proceedings in the trial court presently before us for review.

had entered a plea of guilty to simple assault upon complainant. After breaking into the home, Southall beat the complainant in the head with a telephone and struck her in the face with a shovel, knocking out several of her teeth. During the course of the assault, Southall said, "I already drowned one bitch, but I am going to choke you.... I know I'm going to jail but I am going to kill you first." When the police arrived they saw Southall jump from the second floor window. The complainant had called 911 during the break-in, and the police arrived and arrested Southall. The sworn statement of a police officer made near the time of the crime contains a similar account and appears in the record. The prosecutor stated that the government had as evidence photographs taken of the complainant a few hours after the assault, evidence of her 911 call concerning the break-in, the shovel used in the assault and photos of the crime scene and shovel. A hearing commissioner made findings of fact with respect to the incident based upon evidence presented at Southall's detention hearing which were consistent with this account. Southall is described as the complaining witness' ex-boyfriend. There is no mention in any of these accounts that any third person was present at the time of the crime, as Southall contends. Indeed, when the court inquired of Southall whether he disagreed with any of the government's proffer, Southall responded "[o]nly the part, Your Honor, as far as me killing someone else or drowning someone else, that's not true sir, not at all." While he disputed that he entered the home with the intent to hurt his girlfriend, he stated that it was his opportunity to get the other person in there and fight him, which evidence supported the burglary count. Southall did not dispute the nature and extent of the serious injuries that the complainant suffered as a result of the blows he inflicted upon her once inside, which forms the basis for the assault count, and he made no other challenge to the prosecutor's proffer.

 Even assuming that counsel's representation was deficient, Southall fails to show prejudice which would warrant relief. *See Strickland, supra,* 466 U.S. at 687–88, 104 S.Ct. 2052. "[T]o satisfy the 'prejudice' requirement, [a] defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Where the claimed error is one of failure to investigate or discover potentially exculpatory evidence, this determination will turn on whether it is likely that such evidence would have led counsel to recommend against the plea, which in turn, "turns on whether the evidence likely would have changed the outcome of a trial." *Id.* Southall made no colorable showing in the trial court that there is any exculpatory evidence which the alleged witness could have given or any other exculpatory evidence which his trial counsel failed to discover. *See Sykes v. United States,* 585 A.2d 1335, 1340 (D.C.1991). Not only was the claimed evidence contrary to the government's proffer and Southall's admissions at the plea hearing, but the motion to withdraw plea in which he sought to claim otherwise was not supported by any affidavit of the purported witness. *See id.* (trial court acts within its discretion in declining to hold § 23–110 hearing where defendant fails to produce exculpatory affidavit).

### B.

 Finally, Southall also argues that the Rule 11 proceeding was defective, and therefore, his plea should be set aside. Specifically, he contends that the plea was coerced by the trial court and by trial counsel. Our review of the record of the plea proceeding fails to support this claim. The transcript of the hearing reflects that the trial court took steps to assure that Southall understood his rights, the terms of the agreement, the factual basis for the plea and that it was voluntarily entered. Contrary to Southall's contention, we see nothing in the trial court's actions which can be said to have coerced Southall's plea. Where, as here, the "trial judge has done everything possible to make clear the rights, implications, and voluntary nature of appellant's plea, the appellant must allege specific facts which explain away the presumptive validity of that plea." *Gregg v. United States,* 395 A.2d 36, 40 (D.C.

1978). Southall has made no showing which would overcome the presumptive validity of the plea. *See id.* at 39. His claim is belied by the record. On this record, the trial court did not abuse its discretion in concluding that manifest injustice would not result from denial of the motion.[13]

For the foregoing reasons, the orders appealed from hereby are affirmed, except that the case is remanded to the trial court for resentencing consistent with this opinion.

*So ordered.*

---

**13.** We review for plain error Southall's two remaining claims, made for the first time on appeal. *See Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc)(error so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the proceeding). We reject Southall's contention that there was no factual basis for the plea to aggravated assault. While he said that he did not intend to assault the complainant when he entered her dwelling, but only the person allegedly in her company, this does not negate the government's unchallenged proffer at the time of the plea that he smashed her in the face with a shovel, knocking out her teeth once inside. Southall did not contest this portion of the proffer, and it was sufficient to establish the offense. *See* D.C.Code § 22–504.1. We find no merit in his claim that the court's examination into his complaints against his attorney after the court denied the continuance was inadequate. *See Monroe v. United States,* 389 A.2d 811 (D.C.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Farrell v. United States,* 391 A.2d 755 (D.C.1978). The court held a lengthy hearing on Southall's complaints about counsel on January 25 which satisfied *Monroe–Farrell* requirements, and Southall failed to raise any new complaints; he requested counsel to withdraw only after his request for continuance was denied. Thereafter, Southall entered an unconditional plea of guilty which we have held waives all pre-judgment issues on appeal. *See Collins v. United States,* 664 A.2d 1241, 1243 (D.C.1995).