William P. Barry, with whom Mark J. Rochon, Washington, DC, was on the brief, for appellant.

David B. Goodhand, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas C. Black, and Joseline A. Pena, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and GALLAGHER, Senior Judge.

PER CURIAM:

Appellant, found guilty after a bench trial of assault with intent to kill, malicious disfigurement, arson, and destruction of property, contends that the trial judge abused her discretion in refusing to hold a hearing on his post-conviction motion alleging ineffective assistance of counsel. We affirm.

The government's theory, presented through the witness Deone Adams, was that appellant enlisted Adams' help in setting fire to two buildings, after which appellant unexpectedly threw gasoline at Adams and ignited it. The apparent explanation for this assault was Adams' demand that appellant pay him some money which appellant owed him.

Appellant's post-conviction motion related chiefly to trial counsel's failure to call certain witnesses. First, with his motion appellant presented affidavits from three witnesses who he claimed would have supported his testimony that he was at Massachusetts and Southern Avenues, S.E., more than forty blocks away, at the time of the arson and assault.[1] The trial judge concluded, in part, that the proffered alibi testimony "would be merely cumulative to that of the defendant." Ordinarily this would not be a reason to deny a hearing: corroborative witnesses may cause a factfinder to credit testimony by a single witness (a self-interested defendant)

whose testimony would otherwise fail to persuade. But this case is different. The judge *as trier of fact* found appellant's defense at trial to be "inherently incredible." Specifically, appellant had testified that he lent Adams a gasoline can (Adams had some lawn work to do), drove him to a gas station and bought gas for him, then dropped him off at Massachusetts and Southern Avenues. Less than an hour later, his body seriously burned, Adams supposedly rejoined appellant and appellant drove him to a hospital. Appellant and Adams, the judge explained:

> did not agree to meet at that location [*i.e.,* Massachusetts and Southern Avenues] ... nor did the defendant tell Mr. Adams how long he would be there. Mr. Adams is ... alleged to have walked, or in some way traveled, from this location to the location of the arson, in excess of forty city blocks in that span of approximately forty five minutes, set both buildings and himself afire and return[ed] to a location where he did not know the defendant would be.... Mr. Adams, ... according to the defendant, traveled a considerable distance with severe burns over one half of his body to arrive back at a location where he had no idea the defendant would be.[2]

Having thus previously rejected appellant's alibi defense as unbelievable, the judge, in denying the post-conviction motion, concluded that additional testimony that Adams had rejoined appellant at Massachusetts and Southern Avenues created no "reasoned probability" that she would have evaluated the defense differently; and appellant therefore had not shown the necessary prejudice under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to establish ineffective assistance of counsel.

This court, of course, may not substitute its view of the plausibility or implausibility of the defense for that of the trier of fact. Even after a jury trial, "the trial judge, who has ... watched the evidence unfold, is in a

---

1. Appellant claimed in an affidavit of his own that he had advised his trial counsel "of various witnesses that could establish my whereabouts at the time of the fire," but that counsel had failed to contact these witnesses.

2. Moreover, the judge pointed out, appellant when arrested had told Detective DuVall a totally different story of how Adams had come to be burned.

far better situation than an appellate court to determine whether there is any appreciable possibility that a hearing could establish ... prejudice to the defendant in the *Strickland* sense." *Sykes v. United States,* 585 A.2d 1335, 1340 (D.C.1991). Here, not only the trial judge but also the trier of fact has concluded that testimony from the proffered alibi witnesses, even if consistent with their affidavits, would not create a reasonable probability of a different outcome. *Strickland, supra.* That is dispositive of appellant's claim.

Appellant's post-conviction motion further contained the affidavit of Daniel Botts, an off-duty firefighter who stated that he had seen Adams, on fire, backing out of one of the two buildings appellant and Adams were charged with having torched.[3] According to appellant, Botts's testimony would have impeached Adams' testimony that appellant pulled up in his car and picked up Adams moments after the latter tumbled out of the building. Botts's affidavit, however, assuming he testified in accordance with it, reveals no inconsistencies with Adams' testimony sufficient for us to say that the judge abused her discretion in denying a hearing.[4] Botts did not claim to see how the fires had started, or how Adams had come to be set on fire. Botts was not in a position to rule out appellant's presence at the scene or to refute Adams' testimony that appellant had picked him up in his car, since Botts conceded (para. 5 of his affidavit) that he had gone into the second building that was on fire to look for occupants. Finally, Botts provided no logic for what the judge as factfinder found to be appellant's unbelievable defense of an unplanned rendezvous forty blocks from where Adams had purportedly set himself afire.

The trial judge, therefore, concluded that Botts's assertions even if credited were not such as to create a reasonable probability of a different outcome under *Strickland.* As emphasized, the judge made that determination as the person who had been the trier of fact at trial. In these circumstances, the judge was within her discretion in refusing to hold an evidentiary hearing on the Botts proffer. *Gregg v. United States,* 395 A.2d 36, 39 (D.C.1978) (motion may be denied without hearing where claims, even if true, do not entitle movant to relief).

Appellant's remaining claims of ineffectiveness likewise do not persuade us that the judge improperly denied a hearing on the motion. In the absence of any proffer of expert testimony about the burn patterns of fires or the so-called backdraft theory on which appellant relied, the judge could properly conclude that the claim of trial counsel's deficiency in not calling such an expert was "vague and conclusory." *Id.* Moreover, the judge could fairly reject without a hearing the claim that counsel had failed adequately to cross-examine Adams about his plea-bargain.[5]

*Affirmed.*

SCHWELB, Associate Judge, dissenting:

Forrester had a statutory right to a hearing on his motion to set aside his convictions "[u]nless the motion and files and records of the case conclusively show that [he was] entitled to no relief." D.C.Code § 23–110 (1996). In my opinion, no such conclusive showing has been made, and the trial judge erred in denying Forrester's motion without a hearing.

## I.

The prosecution's case against Forrester turned almost entirely on the credibility of Deone Adams, who admitted setting the fires, but who claimed that he did so together with Forrester and at Forrester's behest and direction. Adams testified that, after the acts of arson had been consummated, Forrester, his erstwhile partner in crime, doused him with gasoline and set him ablaze.

---

**3.** The trial judge's mistaken belief that Botts had not identified Adams is immaterial; there was no dispute that Adams was at the scene of the fires.

**4.** Indeed, Botts's affidavit confirmed Adams' testimony that he had "backed" out of the door to the building.

**5.** The argument that trial counsel elicited material admissions from his own client before the judge as factfinder was not raised below, and in any event has no merit.

Adams claimed that, notwithstanding this attempt by Forrester to consign Adams to an agonizing death, Adams got into Forrester's car so that Forrester could take him to the hospital for treatment of the injuries that Forrester had just inflicted.[1] Adams apparently offered no protest when Forrester told him that, in order to avert suspicion, they would have to travel to a hospital outside the District. In fact, according to Adams' account, he patiently remained with Forrester while Forrester took a detour in order to pick up Mary Rogers, who was Forrester's girlfriend. Although Forrester left Adams and Ms. Rogers in the car together, and although Adams regarded Ms. Rogers as a friend, he did not disclose to Ms. Rogers that it was Forrester who had set him ablaze.

In her order of February 28, 1994, the trial judge wrote that there was no evidence "which would suggest that Mr. Adams was not a credible witness." The judge heard the testimony and I did not, but in this case I am nevertheless constrained to dispute this assertion insofar as it applies to Adams' account of Forrester's attempt to kill him. It is, of course, possible that the events happened as Adams related them, but if they did, then neither Adams nor Forrester acted as people in their circumstances might be expected to act. Surely the victim of an especially brutal assault would not ordinarily trust, or accept succor from, the man who, just moments earlier, had set him on fire in order to do him in. Moreover, if Forrester tried to burn Adams alive (perhaps in order to silence the sole witness to Forrester's own role in the arson), it is difficult to understand why he would then drive Adams to a hospital, where Adams would be kept alive (contrary to Forrester's initial plan), and where he might well reveal Forrester's responsibility for Adams' injuries. An account that presupposes that both men acted in such a surprising manner should, in my judgment, generate at least some skepticism on the part of the trier of fact.

The foregoing does not suggest that the evidence was insufficient, as a matter of law, to support Forrester's convictions of assault with intent to murder and of malicious disfigurement. Indeed, on appeal, Forrester wisely makes no claim of evidentiary insufficiency. I suggest, however, that the conduct of the principals, as described by Adams, was so at variance with the norm as to render Adams' credibility open to serious question. The "prejudice" prong of the *Strickland* test[2] was thus easier for Forrester to meet than it would have been if Adams had told a more probable story. In my opinion, a hearing was therefore required on Forrester's claim of ineffective assistance of counsel if there was any serious possibility that Forrester's attorney failed to present available witnesses who could have significantly contradicted Adams' testimony in material respects.

## II.

Forrester claims that an off-duty fireman, Daniel Botts, could have challenged significant parts of Adams' story. In a police report which government counsel made available to Forrester's attorney in advance of trial, Botts was identified as a witness to the fire who had observed a suspect running from the torched building at 1443 Smith Place, S.E. Forrester's trial counsel never interviewed Botts, and Botts did not testify.

In an affidavit filed in support of Forrester's § 23–110 motion, Botts averred in pertinent part:

3. I ran immediately to the building, concerned that someone might be inside. When I arrived at the front of 1443 Smith Place, S.E., I saw a man, his body on fire, backing out of the front of the building. He was carrying a can, which he sat down at the front door of the building.

4. I yelled at the man, trying to get him to roll over on the ground to put out the fire. He ran instead to an alley, and ran down the alley toward the back of the building. There was no one else in front of the building, and the man did not get into an automobile in front of the building.

---

1. Adams testified that, once in Forrester's car, he told his tormentor: "Man, I'm burned up. Man, I'm burned up. You have to take me to the hospital, man."

2. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Adams, on the other hand, testified on direct examination that, using gasoline, he set a fire on the upstairs floor of the building, which was a duplex. Adams then came downstairs. According to Adams, Forrester was standing in the outer doorway of the building. Adams told Forrester that he was ready to leave, but at this point Forrester suddenly doused him with gasoline. Adams testified that Forrester lit a match and threw it at him, setting Adams on fire. Adams tried to "get out of there," and he quickly approached the door, which was now closed and which he initially found difficult to open. Finally, according to Adams:

> I backed up again and pushed it open, and that's when the door did finally come open. And I fell down a flight of steps. I fell down a flight of steps and I fell onto the ground. And I looked to my right, and the building that [Forrester] was working in was on fire. And the building that I was in was on fire also. That's when [Forrester] pulled his car up.... [Forrester] ... pulled me into the car and ... we left the scene.

The government contends that Adams' testimony is "not inconsistent" with Botts' affidavit. I cannot agree. In my opinion, Botts' description of Adams' departure from the building is quite different from Adams' testimony. If, as Adams claimed, he "fell down a flight of steps" in his haste to leave the burning duplex, one would have expected Botts to observe and record such a startling event. In describing Adams' exit, however, Botts stated only that Adams "backed out of" the building.

Botts also reported to the police, and repeated in his affidavit, that Adams was carrying a gasoline can when he came out of the building. Adams testified, to the contrary, that he left the can on the upper floor of the duplex.[3] This discrepancy was a potentially significant one. Adams claimed that he was still inside the building when Forrester doused him with gasoline and set him on fire. Adams testified that he was in severe pain, that he could not see, and that he fell down a flight of stairs on the way out of the building. If Adams' description of Forrester's assault

and its immediate aftermath is accurate, then it appears improbable that Adams would still have had the gasoline can in his possession at the time he "sat [it] down at the front door of the building." Botts' testimony therefore had the potential to undermine a material part of Adams' version of events.

Also, according to Adams, Forrester drove up and pulled Adams into his car almost immediately after Adams tumbled out of the building with his clothes on fire. There is nothing in Adams' account to suggest that he ran into an alley before Forrester drove up, or, indeed, at any time. Botts' representation in his affidavit that "[t]here was no one else in front of the building, and the man did not get into an automobile in front of the building" thus at least potentially contradicts Adams' description of his departure from the scene, and it raises an issue as to whether Forrester was present when and where Adams said he was.

The trial judge concluded that Botts' account would not have "enhanced the probability that the [c]ourt's decision would have been different." This ruling, however, turned in part on an incorrect recollection of the record. According to the judge, "Mr. Botts' statement only indicates that he observed a man in the vicinity of the burning buildings, not that he was able to identify the man as either the defendant or Mr. Adams...." In fact, Botts identified Adams at the hospital as the suspect who had run from the burning building with his clothes on fire.

Adams' presence on the scene was not in dispute, and to that extent, as the majority notes, the judge's factual error is immaterial. It appears from the judge's written order, however, that she believed Botts' supposed failure to recognize Adams to be significant. The judge thus may have underestimated Botts' knowledge of relevant facts and the significance of his potential testimony. It is my view, in any event, that in light of the presumption in favor of an evidentiary hearing on § 23–110 motions alleging ineffective assistance of counsel, *Ramsey v. United States,* 569 A.2d 142, 147 (D.C.1990), and

---

3. "I think I left it upstairs. I didn't have it with me."

especially those based on facts dehors the trial record, *Gibson v. United States*, 388 A.2d 1214, 1216 (D.C.1978) (per curiam), the issues raised by Botts' affidavit were not properly amenable to resolution on the motion papers alone.

### III.

Forrester also claims that his trial counsel was constitutionally ineffective because he failed to interview or to present three prospective alibi witnesses. In support of his § 23–110 motion, Forrester presented three admittedly sketchy affidavits which, if liberally construed in Forrester's favor, tended to show that he was at Massachusetts and Southern Avenues in southeast Washington at the time of the arson, and that he therefore could not have been setting Adams on fire more than forty blocks away. According to the affidavits, Adams subsequently arrived on the scene, in some pain, and the two men left in Forrester's car.

The trial judge concluded that Forrester was not prejudiced by his attorney's failure to call these alibi witnesses and that no hearing was required. She viewed the affidavits as cumulative of Forrester's own testimony as to his whereabouts, and she found that testimony to be patently incredible.

The first of the judge's reasons will not withstand scrutiny. As the majority correctly points out, "corroborative witnesses may cause a factfinder to credit testimony by a single witness (a self-interested defendant) whose testimony would otherwise fail to persuade." Maj. op. at 64. The judge's second explanation, however, is a good deal more plausible. For the reasons stated by the trial judge and quoted by my colleagues, *id.* at 64, the credulity of an impartial trier of fact might be severely strained by Forrester's claim that he and Adams parted before the fire and that, without any prior arrangement between them, a severely burned Adams just happened to join him some two miles away shortly after the fire.

It must be noted, nevertheless, that Forrester's account, while improbable, is not absolutely impossible. If the three prospective alibi witnesses had been permitted to testify, and if they had come across as truthful and reliable witnesses, it is at least conceivable that they would have added some appreciable measure of plausibility to Forrester's version of events. This is not a case in which the proffered testimony of a witness is patent nonsense, as it would be if, *e.g.*, a witness had provided an affidavit in which he swore that $2 + 2 = 7$. Forrester's contention that the judge should have heard from the alibi witnesses is therefore at least plausible.

### IV.

In my opinion, even apart from the alibi issue, we should remand the case for a hearing on Forrester's § 23–110 motion and permit Forrester to present Botts' testimony to the trial judge. It is therefore unnecessary to decide whether a hearing would have been required solely on the basis of counsel's failure to call alibi witnesses. At the hearing on the motion which I believe to be required, however, Forrester should be permitted to present the testimony of the alibi affiants as well as that of Botts.[4] Because my colleagues take a different view, I respectfully dissent.

---

4. I agree with my colleagues that, in the absence of any proffer of expert testimony on Forrester's "backdraft theory" as to how Adams' burns occurred, Forrester is not entitled to a hearing on his claim that his trial counsel was constitutionally ineffective by failing to present such testimony at trial. *See Sykes v. United States*, 585 A.2d 1335, 1338–39 (D.C.1991). This does not mean, however, that Forrester should be precluded from presenting an expert witness on this subject if the case were to be remanded for a hearing on Forrester's motion.