*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CO-0509

DAVID A. SHEPHERD, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2012-CF1-009602)

(Hon. William W. Nooter, Motions Judge)

(Submitted November 16, 2021                    Decided June 22, 2023)

*Richard S. Stolker* for appellant.

*Channing D. Phillips*, Acting United States Attorney at the time, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, *Grace Richards*, and *Katherine M. Kelley*, Assistant United States Attorneys, for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and GLICKMAN,[*] *Senior Judge*.

EASTERLY, *Associate Judge*: In this opinion we address once again whether

and when an individual seeking post-conviction relief under D.C. Code § 23-110 is

---

[*] Judge Glickman was an Associate Judge at the time of submission. His status changed to Senior Judge on December 21, 2022.

entitled to a hearing. David Shepherd was convicted of first-degree murder while armed and related charges in connection with the shooting death of Henry Charles Miller ("Chuck"), which Mr. Shepherd claimed was in self-defense. After this court affirmed his convictions on direct appeal, *Shepherd v. United States*, 144 A.3d 554, 564 (D.C. 2016), Mr. Shepherd, who until then had been represented by attorneys from the Public Defender Service for the District of Columbia ("PDS"), was appointed new counsel and filed a motion under D.C. Code § 23-110 alleging that he had been provided with ineffective assistance of counsel ("IAC") and requesting a hearing. The motions court summarily denied him relief. Mr. Shepherd timely appealed. We incorporate the facts as set forth in our opinion resolving Mr. Shepherd's direct appeal. *See Shepherd*, 144 A.3d at 557-58. Reviewing the motions court's ruling for abuse of discretion, *Bellinger v. United States*, 127 A.3d 505, 514 (D.C. 2015), which includes an assessment of whether it relied on correct legal principles, *McFerguson v. United States*, 870 A.2d 1199, 1203 (D.C. 2005), we discern a number of analytic errors and conclude that remand is required.

## I.    Analysis

When an incarcerated person files a motion challenging their conviction under D.C. Code § 23-110, the motions court must hold a hearing "[u]nless the motion and

files and records of the case *conclusively* show that the prisoner is entitled to no relief." D.C. Code § 23-110(c) (emphasis added). Interpreting this text, this court has long held that the statute creates a default rule[1] in favor of a hearing (assuming no predicate procedural bar) with only three exceptions for: "(1) vague and conclusory allegations, (2) palpably incredible claims, and (3) assertions that would not merit relief even if true." *Rice v. United States*, 580 A.2d 119, 122 (D.C. 1990) (quoting the exceptions set forth in *Ramsey v. United States*, 569 A.2d 142, 147 (D.C. 1990), and explaining that those exceptions "set forth the principles which control the application of this [statutory] provision"); *see also Ramsey*, 569 A.2d at 147 (acknowledging these "three categories of claims that do not merit hearings" and citing *Pettaway v. United States*, 390 A.2d 981, 984 (D.C. 1978)); *Pettaway*, 390 A.2d at 984 (explaining that, to "giv[e] practical effect to [the text of] § 23-110[(c),] . . . courts have developed [these] three categories of claims which do not merit hearings" and citing inter alia *Gibson v. United States*, 388 A.2d 1214,

---

[1] Although we have often referred to this as a "presumption," *see, e.g.*, *Bethea v. United States*, 170 A.3d 192, 194 (D.C. 2017), it is more accurately termed a "default rule" subject to enumerated exceptions, *cf. In re Chaganti*, 144 A.3d 20, 23 n.3 (D.C. 2016) (explaining that an attorney discipline rule we previously described as setting forth a "rebuttable presumption" was more accurately categorized as a "rule subject to exceptions"). *Compare Presumption*, *Black's Law Dictionary* (11th ed. 2019) (defining a presumption as a "legal inference or assumption that a fact exists"), *with Rule*, *Black's Law Dictionary* (11th ed. 2019) (defining a rule as a "general norm mandating . . . action in a given type of situation").

1215-16 (D.C. 1978));[2] *Gibson*, 388 A.2d at 1215-16 (explaining that § 23-110 "*requires* an evidentiary hearing *unless* the allegations of the motion itself are vague and conclusory, are wholly incredible, or even if true, would merit no relief.").[3] Thus, "[w]hile the decision whether to hold an evidentiary hearing on a § 23-110 [motion] . . . is committed to the trial court's discretion, the extent of that discretion is quite narrow," *Bellinger*, 127 A.3d at 514-15 (internal quotation marks omitted), and "any non-frivolous question whether a hearing is appropriate should be resolved in the affirmative," *Joseph v. United States*, 878 A.2d 1204, 1209 (D.C. 2005) (brackets and internal quotation marks omitted).

---

[2] By also citing to several earlier cases in which the denial of a hearing was upheld without express reference to these three exceptions, *Pettaway* indicated that it was aggregating the rationales of these decisions in the three exceptions it recognized. *See Pettaway*, 390 A.2d at 984. *Gibson* (cited by *Pettaway*) similarly synthesized the rationales of these earlier cases in setting out the three exceptions. *See Gibson*, 388 A.2d at 1215-16 (explaining that the exceptions are drawn from precedent).

[3] Although *Pettaway* and *Gibson* standardized the language of these three exceptions, some of the older non-standard descriptions lingered. *See, e.g., Sykes v. United States*, 585 A.2d 1335, 1339 (D.C. 1991) (explaining that no hearing is required if a claim "fail[s] to withstand initial checking for verity, or at the least, the probability of verity" (internal quotation marks omitted)). *But see Pettaway*, 390 A.2d at 984 & n.2 (explaining such claims are "a subcategory" of claims that are "palpably incredible," one of the three recognized exceptions).

**A.      The Motions Court's Flawed Bases for Denying a § 23-110 Hearing**

Although the motions court acknowledged that a § 23-110 movant is generally entitled to a hearing, for multiple reasons it determined that a hearing was not warranted in this case.  We conclude that the court's reasoning was flawed in several respects.

The court first concluded that a hearing was not warranted by relying on the following train of logic: (1) Mr. Shepherd's § 23-110 motion was procedurally barred under *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C. 1987) (generally requiring a § 23-110 motion to be brought during the pendency of a defendant's direct appeal); (2) although Mr. Shepherd had shown the necessary cause to overcome the procedural bar (the continued representation by PDS attorneys on appeal), he had failed to show the requisite prejudice, *id*. at 1281-82; and (3) having failed to overcome the procedural bar, Mr. Shepherd was not entitled to a hearing. The trial court's analysis was faulty at the first step: although a procedural bar may obviate a hearing,[4] Mr. Shepherd's § 23-110 motion was not procedurally barred

---

[4] *See Bradley v. United States*, 881 A.2d 640, 645 (D.C. 2005) ("We have often and consistently upheld the denial of a second or successive § 23-110 motion without a hearing, at least in the absence of a showing of cause and prejudice, which appellant has not made."); *cf. Sullivan v. United States,* 721 A.2d 936, 937 (D.C.

under *Shepard*. When a defendant has been "represented on direct appeal by the same counsel that represented him at trial, he is not procedurally barred from making a collateral attack based upon claims of ineffective assistance of counsel although the issue was not raised during the pendency of his direct appeal." *Little v. United States*, 748 A.2d 920, 923 (D.C. 2000); *accord Hardy v. United States*, 988 A.2d 950, 960 (D.C. 2010) ("Failure to raise the issue of ineffectiveness of trial counsel during the pendency of the direct appeal does not constitute procedural default . . . where the appellant was represented on direct appeal by the same counsel that represented him at trial . . . ." (internal quotation marks omitted)); *see also Terry v. United States*, 114 A.3d 608, 630 n.10 (D.C. 2015) ("[B]ecause [the defendant] was represented by the same counsel during the trial and on appeal, any § 23-110 challenge he raises [based on IAC] will not be burdened by a showing of cause and prejudice . . . ."). The motions court should not have relied on a perceived procedural bar to deny Mr. Shepherd a hearing.

---

1998) (affirming trial court's denial of a § 23-110 motion without a hearing based on *Shepard* where pro se movant had not informed the motions court that court-appointed counsel had represented movant at trial and on direct appeal, but authorizing movant to file a new motion to be considered on the merits). *But see Arrington v. United States*, 238 A.3d 218, 221 n.2 (D.C. 2020) (acknowledging that under § 23-110, trial courts have the discretion "to decline to invoke a procedural bar").

The motions court alternatively ruled that, in addition to the three exceptions to the default hearing rule established in our § 23-110 case law, it could deny a hearing on a fourth basis, explaining that "a hearing is not automatically required if the defendant's claims . . . (4) can otherwise be disposed of on the existing record." But where there is a § 23-110 motion before the court, there are, as explained above, only three legitimate reasons for denying a § 23-110 hearing: if the claims are (1) vague and conclusory, (2) palpably incredible, or (3) would merit no relief even if they were true. *See Gaston v. United States*, 535 A.2d 893, 899 (D.C. 1988) (explaining that "*[o]nly* three categories of claims do not merit hearings" (emphasis added)); *Bellinger*, 127 A.3d at 515 (reaffirming that "[w]e will affirm the trial court's denial of a § 23-110 motion without a hearing *only* if the claims" fall within one of the three established exceptions (emphasis added) (internal quotation marks omitted)). Separately assessing that a claim can be resolved on the existing record is not a valid fourth basis for denying a § 23-110 movant a hearing. *See Dorsey v. United States*, 225 A.3d 724, 728 (D.C. 2020) (acknowledging that "[e]choing the language of the statute, we have said that a hearing is not required when the motion is 'capable of resolution on the existing record,'" but explaining that the "particular" circumstances in which a hearing could be denied were limited to the three

established exceptions to the default rule (citation omitted)).[5] Indeed, endorsing an additional exception that no hearing is required when a movant's claims can be resolved "on the existing record" would swallow the other three exceptions, do little to reinforce the default rule that a hearing should be held, and would instead encourage courts to resolve gaps in the record against § 23-110 movants rather than recognizing that those gaps necessitate a hearing. *See, e.g.*, *Johnson v. United States*, 385 A.2d 742, 744 (D.C. 1978) (remanding for a hearing because the "motions, files and records in [the] case do not conclusively *rebut* appellant's assertions" (emphasis added) (interpreting D.C. Code § 23-110)); *McCrimmon v. United States*, 853 A.2d 154, 165 (D.C. 2004) (remanding for a hearing where the "record raise[d]—but [did] not answer" questions about the appellant's claims); *Bethea v. United States*, 170

---

[5] Granted some of our opinions—including *Ready v. United States*, 620 A.2d 233 (D.C. 1993), on which the motions court relied—have been less clear that the three exceptions are exclusive, *see id.* at 234 (listing the three exceptions as additional circumstances, rather than the *only* circumstances, under which the court can deny a hearing), or have even indicated that the default rule is *not* to hold a hearing, *see, e.g.*, *Ellerbe v. United States*, 545 A.2d 1197, 1199 (D.C. 1988) (stating that a § 23-110 "movant is entitled to a hearing on his claims regarding the ineffective assistance of trial counsel only when the claims cannot be disposed of by resort to the files and records of the case because the claims involve matters outside of the record"). But to the extent that later cases have contradicted or misstated *Pettaway* and *Gibson* and their progeny, our earlier cases interpreting § 23-110 control. *See Wheeler v. United States*, 977 A.2d 973, 986 n.34 (D.C. 2009) ("[W]e have ruled on several occasions that, when decisions of this court are in conflict, the earlier decision applies.").

A.3d 192, 195-96 (D.C. 2017) (remanding for a hearing where "the trial court conflated the procedural question of whether there is a reason to deny [the appellant] a hearing on his motion with the distinct merits question of whether the [appellant's] claims warrant relief (once all evidentiary questions have been resolved, typically through a hearing)"). The court should not have relied on a nonexistent fourth exception to the default rule to deny Mr. Shepherd a hearing.[6]

## B.      Whether the Motions Court Had Other Legitimate Bases for Denying a Hearing

This leaves the question whether any of the three established exceptions to the default rule justified the denial of a hearing in this case. We look first to the claims of ineffectiveness regarding trial counsel's investigation and questioning of the government's three eyewitnesses: Mr. White, the only eyewitness without ties to the decedent; as well as Ms. Ingram, the decedent's cousin, and Mr. Dickerson, who was "like family" to Ms. Ingram. We then look to Mr. Shepherd's claim regarding his

---

[6] The fact that there is no fourth exception to the default hearing rule that allows the trial court to deny a § 23-110 movant a hearing when the claims "can otherwise be disposed of on the existing record" does not mean that courts should disregard the existing record in evaluating the three established exceptions to the statute's hearing requirement. See, e.g., *infra* Section I.B. (relying inter alia on the existing record to assess whether any of the three established exceptions to the default rule justified the denial of a hearing in this case).

trial counsel's self-proclaimed unreadiness for trial.

The motions court concluded that Mr. Shepherd's allegations regarding his attorney's investigation and questioning of Mr. White, Ms. Ingram, and Mr. Dickerson would not merit any relief even if they were true; in other words, "defense counsel acted reasonably and did not prejudice [Mr. Shepherd's] case in any way."[7] Because "we owe no deference" to these legal conclusions, we review them de novo, *see Jones v. United States*, 918 A.2d 389, 402 (D.C. 2007) (internal quotation marks omitted), and conclude that some of Mr. Shepherd's claims merit a hearing on remand. As for Mr. Shepherd's remaining claim regarding his trial counsel's unspecified unreadiness, we conclude the trial court did not abuse its discretion in denying a hearing on that "vague and conclusory" claim.

---

[7] The motions court stated that the "showing of prejudice required to overcome procedural default on collateral review is *significantly greater* than that necessary to establish plain error on direct review," quoting a nonbinding federal court opinion, *United States v. Pettigrew. See* 346 F.3d 1139, 1144 (D.C. Cir. 2003) (emphasis added) (internal quotation marks omitted). *But see St. John v. United States*, 227 A.3d 141, 144-46 (D.C. 2020) (analyzing prejudice in a procedural default case under *Strickland*'s "reasonable probability" standard). We see no indication, however, that the motions court imposed some sort of heightened prejudice analysis based on its misunderstanding that Mr. Shepherd's claims were procedurally barred. And Mr. Shepherd has not challenged the motions court's ruling on that basis.

### 1. Trial Counsel's Efforts to Investigate and Discredit Mr. White's Testimony

At trial, Mr. White testified that he saw, from his bedroom window across the street, Mr. Shepherd walk up to and shoot the decedent, *Shepherd*, 144 A.3d at 558; and he made a similar statement when he called 911, the recording of which was admitted without objection. Mr. Shepherd asserted in his motion that Mr. White had previously told a PDS investigator, Nic Gerschman, that he "was not looking out the window when the gun[] went off"—Mr. Gerschman, by then a law student, so testified at trial—but the defense team failed to "aggressively follow up" after Mr. White failed to sign a written statement to this effect and waited over nine months to send any other investigators. Mr. Shepherd further asserted that the two additional investigators, Sidney Scully and Paige Whidbee, who went to re-interview Mr. White, could have corroborated Mr. Gerschman's trial testimony that Mr. White had admitted that he did not see the actual shooting. Mr. Shepherd additionally asserted that Mr. White's wife was present with Mr. White in their bedroom and should have been interviewed to see if she could have provided further corroboration. The motions court adopted the government's argument that Mr. White's statements to the 911 operator and statement to the first PDS investigator were not necessarily inconsistent and could be reconciled, and observed that counsel nonetheless "was diligent in investigating [Mr.] White's testimony" and further that whether Mr.

White "want[ed] to sign a written statement was not within the defense counsel's control." The motions court did not acknowledge Mr. Shepherd's argument that his counsel had failed to call the other two investigators as witnesses or to interview Mr. White's wife as a potential witness.

The most powerful aspect of this claim is whether Mr. Shepherd's trial counsel should have presented testimony from the two PDS investigators who re-interviewed Mr. White. Assuming the failure to call these individuals as defense witnesses at trial constituted deficient performance under *Strickland*,[8] it is at least plausible at this point—before Mr. Shepherd has been given an opportunity to present his evidence at a hearing—that additional evidence discrediting Mr. White's testimony that he saw the shooting would have had a "reasonable probability" of

---

[8] *See Cosio v. United States*, 927 A.2d 1106, 1123 (D.C. 2007) (en banc) (explaining counsel's performance is deficient if it "fell below an objective standard of reasonableness" (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The government contests this in passing, but the motions court did not make a determination to the contrary, nor did it have a basis to do so. *See Long v. United States*, 910 A.2d 298, 309 (D.C. 2006) ("It is well settled that counsel's unexplained failure to present . . . testimony [bolstering the defendant's "actual defense"] constitutes deficient performance. Perhaps there are good reasons why trial counsel did not call [the] proffered witnesses, but on the existing record, without holding a hearing, the motions judge was not in a position to make such a finding—nor did [he] profess to do so." (footnote omitted)).

changing the jury's mind.[9] Mr. White was the only eyewitness without ties to the decedent's family, and Ms. Ingram and Mr. Dickerson had been significantly impeached or discredited at trial in other respects. For example, Ms. Ingram admitted that her previous statements to police contradicted her testimony about whether the decedent was drunk and where Mr. Dickerson was during the shooting; she also admitted she had lied in her grand jury testimony about whether her husband was present just before the shooting. Similarly, Mr. Dickerson admitted to misleading prosecutors when they were investigating the incident and his testimony contradicted the testimony given by other government witnesses. See *infra* Section I.B.3. We cannot discount the possibility that additional testimony from the two investigators could have forced Mr. White to confront his inconsistent statements to *multiple* defense witnesses and possibly persuaded the jury that Mr. White did not see the shot and (like Ms. Ingram and Mr. Dickerson) could not be trusted to have seen Mr. Shepherd shoot Mr. Miller without provocation or without the need for self-defense. In other words, pre-hearing, these allegations do not strike us as palpably incredible or vague and conclusory; and they are claims that, if true, might

---

[9] The motions court quoted from our decision in Mr. Shepherd's direct appeal that the "the evidence of appellant's guilt was very strong." *See Shepherd*, 144 A.3d at 563. But when reviewing an IAC claim brought via collateral attack, the court must take into account that "the asserted strength of the government's case may itself be a product of trial counsel's ineffectiveness." *Rice*, 580 A.2d at 123.

merit relief.[10]  *See, e.g.*, *Bruce v. United States*, 617 A.2d 986, 995 (D.C. 1992) (remanding for a hearing where appellant proffered evidence that would help "nail down the uncontested but elusive fact" of who fired a gun and could "potentially cast doubt on the accuracy of . . . witnesses' descriptions of other aspects of this encounter"); *see also Forrester v. United States*, 707 A.2d 63, 64 (D.C. 1998) ("[C]orroborative witnesses may cause a factfinder to credit testimony by a single witness . . . whose testimony would otherwise fail to persuade.").[11]

---

[10] As noted above, the motions court never grappled with whether counsel's failure to call the two additional investigators as defense witnesses constituted deficient performance.  Although the court noted that "[t]he jury already had access to the recording of [Mr. White's] 911 call, his statements to [one] investigator, and his statements under cross-examination," it was focused on whether earlier investigation would have secured a written statement from Mr. White, not whether additional witnesses diminishing his credibility would have made a difference at trial.  While we would not necessarily view Mr. Shepherd's claim that his trial counsel failed to "aggressively" investigate Mr. White and lock him into a sworn statement as warranting a hearing on its own, Mr. Shepherd should be allowed to advance that related claim at the hearing on remand as well.  *See Dorsey v. United States*, 225 A.3d 724, 733 (D.C. 2020) ("We cannot conclude at this point that an evidentiary hearing is warranted on this aspect of appellant's claim, but the trial court should reconsider the issue in conjunction with the hearing on whether the *Strickland* test is satisfied as it applies to [the § 23-110 movant's related] claim . . . ."); *see also Bellinger*, 127 A.3d at 518 ("Deficient investigation cannot be excused on the ground that a competent attorney . . . could have made an informed judgment to pursue an alternative strategy. . . ." (cleaned up)).

[11] Although we affirmed the denial of a hearing despite three proffered witness affidavits in *Forrester*, we explained that it was not an "ordinar[y]" case because the motions judge had also presided over the bench trial and was uniquely positioned "*as trier of fact*" to determine that the proffered witnesses would not have changed her verdict.  707 A.2d at 64.  Here, Mr. Shepherd had a jury trial and the motions judge was not the trial judge.

On this record, then, we cannot assess whether the failure to call the two additional investigators might amount to *Strickland* prejudice.  *See Rice*, 580 A.2d at 123 (explaining that the court could not "rule at this point that, as a matter of law, the evidence of appellant's guilt was so strong that there can be no reasonable probability that the exculpatory evidence proffered in appellant's § 23-110 motion, whatever its strength, could have raised a reasonable doubt in the minds of the jurors").  Any assessment of prejudice will turn on the precise details and the credibility of these individuals' testimony about their interaction with Mr. White; but such "credibility determinations . . . may be resolved only by recourse to a full evidentiary hearing." *Long v. United States*, 910 A.2d 298, 310 (D.C. 2006) (internal quotation marks omitted); *see also Rice*, 580 A.2d at 122-23 (cautioning that deciding credibility on the record "assume[s] the answer to the very question which an evidentiary hearing could illuminate").

For the first time on appeal the government argues that we should not consider this possible contradictory evidence when assessing Mr. Shepherd's ineffective-assistance claim because he "provided no affidavits or other credible proffers to establish what, if anything, the [additional PDS] investigators could recall regarding what [Mr.] White told them in the 2013 interview."  But the proffer of potential witness testimony pre-hearing is not a formalistic requirement; rather, an "affidavit

or other credible proffer" is a tool for the court to ensure the § 23-110 petitioner has some basis for their claims. *See Pettaway*, 390 A.2d at 984 ("A § 23-110 motion will be vulnerable to dismissal as 'vague and conclusory' when a prisoner does not present a factual foundation in some detail."); *Lanton v. United States*, 779 A.2d 895, 903-04 (D.C. 2001) (likening a § 23-110 motion to an initial pleading); *Johnson*, 385 A.2d at 743-44 (explaining that "appellant's only burden, prior to hearing, is to adequately allege facts which, if demonstrated, would establish [IAC]"). Accordingly, we have held that assertions from an appellant within the § 23-110 motion itself, *Lanton*, 779 A.2d at 903-04, or signed but unsworn statements from the potential witnesses, *Rice*, 580 A.2d at 121 & n.3, among other documents, may constitute credible proffers.[12]

---

[12] *But see Strozier v. United States*, 991 A.2d 778, 786 (D.C. 2010) (stating that our court "require[s]" an attachment to the motion from the potential witness). *Strozier* cites to a line of cases that appear to have incorrectly interpreted *Sykes v. United States*, 585 A.2d 1335, 1340 (D.C. 1991), and others as a bright-line rule that the court can deny a hearing for a failure to call witnesses claim if there is no "credible proffer" outside the motion itself. *See, e.g.*, *Reaves v. United States*, 694 A.2d 52, 57 n.6 (D.C. 1997) (citing *Sykes* to require "[m]ore formal proof" than "assert[ing] in the moving papers the substance of the testimony"). Many of these cases are distinguishable, including both *Strozier*—where the trial court found the claims "vague and conclusory" since the motion contained *no* information about the potential testimony, 991 A.2d at 786-87—and *Sykes*—where the court ultimately denied a hearing because the witness proffered in the motion would have had to incriminate herself to provide exculpatory testimony, 585 A.2d at 1340; *see also Lanton*, 779 A.2d at 903 (explaining this distinction). More to the point, to the extent our cases appear to construe such a formalistic requirement as an independent ground to deny a § 23-110 movant a hearing outside of the three enumerated

Here, Mr. Shepherd's motion contained sufficient information (seemingly based on materials from trial counsel's file) to support his request for a hearing. He provided the full names—Sidney Scully and Paige Whidbee—of the two PDS investigators who re-interviewed Mr. White; a specific time frame for when these investigators spoke to Mr. White; and the corroborating information they could provide. There is also corroborating evidence in the trial record that Mr. White spoke with at least one additional investigator multiple times after Mr. Gerschman interviewed him, although the exact content of these conversations is unknown. *See Gillis v. United States*, 586 A.2d 726, 728-29 & n.1 (D.C. 1991) (remanding for a hearing where appellant's allegations of counsel's failure to investigate could be consistent with a brief mention of evidence in a transcript).

Indeed, the government implicitly conceded the pre-hearing sufficiency of Mr. Shepherd's proffer by failing to raise this argument before the motions court. Had it felt that Mr. Shepherd needed to provide additional documentation, it could have argued in its opposition that Mr. Shepherd's request was inadequately supported and the court—at the government's request or sua sponte—would have been well within its discretion to ask Mr. Shepherd to supplement his motion before

exceptions noted above, they contradict the language in the statute itself requiring the record to "conclusively" show the movant is not entitled to relief.

holding a hearing. *Cf. Jones*, 918 A.2d at 407-08 ("[W]here . . . impediments in the motion and files and records of the case present credibility problems if unresolved, providing the appellant with an opportunity to supplement his initial motion . . . could be a prudent course of action." (internal quotation marks omitted)); *Steward v. United States*, 927 A.2d 1081, 1090 (D.C. 2007) ("[W]e think it may be appropriate for the trial court, before determining whether to set a hearing date, to afford appellant an opportunity to supplement his motion."); *Metts v. United States*, 877 A.2d 113, 120 (D.C. 2005) (noting that the trial court provided defendant with time to clarify statements from witnesses submitted with his initial § 23-110 motion). Accordingly, we are unpersuaded by the government's late-stage objection to Mr. Shepherd's request for a hearing on the grounds that he had "provided no affidavits or other credible proffers" to support it.

We conclude remand is required to hold a hearing on Mr. Shepherd's claim that his trial counsel was ineffective for failing to call Sidney Scully and Paige Whidbee at trial.[13] In remanding this claim to the trial court, "we do not address [its]

---

[13] We agree with the government that Mr. Shepherd's claim that his attorney was deficient for failing to interview or call Mr. White's wife to the stand is unsupported on the current record. Mr. Shepherd has not put forth any evidence about what Mr. White's wife would say; he has stated only that she was present in the bedroom with Mr. White when the events to which he testified occurred. But given that we are remanding on other grounds, we direct that he be given the

[ultimate] merits." *Jones*, 918 A.2d at 412 (second alteration in original) (internal quotation marks omitted). "We decide only that . . . [appellant] makes a colorable claim which, if true, would provide a basis for relief, [and so] the trial court should not decide the matter summarily." *Newman v. United States*, 705 A.2d 246, 262 (D.C. 1997).

### 2. Trial Counsel's Use of Mr. Dickerson's Prior Convictions

Mr. Shepherd also asserts that his trial counsel should have resolved earlier whether trial counsel could impeach Mr. Dickerson with prior convictions[14] and should have cross-examined Mr. Dickerson about these convictions rather than allowing the jury to hear about them in a litany of stipulations many days after Mr. Dickerson testified. We have acknowledged that immediate live testimony has "significant advantages" over stipulations, *Dorsey*, 225 A.3d at 733 n.8 (internal quotation marks omitted), and that "a party may not be forced to accept a stipulation

---

opportunity to attempt to support this claim on remand as well. *See Ramsey*, 569 A.2d at 148 n.15 (allowing appellant to pursue less plausible claims on remand where already remanding more plausible claims for a hearing).

[14] The record does not specify which statute was at issue in these mid-trial discussions, but it appears to be D.C. Code § 14-305(b)(2)(B), which restricts impeachment via criminal convictions if more than ten years have elapsed since certain dates dictated by statute.

in lieu of testimonial or tangible evidence," *Rollerson v. United States*, 127 A.3d 1220, 1229 (D.C. 2015) (internal quotation marks omitted). It is therefore possible that trial counsel's actions or lack thereof in failing to resolve the questions surrounding Mr. Dickerson's impeachable convictions earlier and ultimately agreeing to a stipulation of these convictions, in lieu of directly confronting Mr. Dickerson directly with them, "fell below an objective standard of reasonableness." *Cosio v. United States*, 927 A.2d 1106, 1123 (D.C. 2007) (en banc) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). On the other hand, it is possible that in the context of the timing of disclosures regarding Mr. Dickerson and the restrictions on scheduling of witnesses, stipulating to Mr. Dickerson's prior convictions was a reasonable, strategic decision for defense counsel to make. *See id.* at 1127. The record is silent on this question, however, because the government did not proffer any explanations from counsel nor was counsel ever called to testify at a hearing to explain their thinking. We therefore remand for the motions court to hold a hearing on this claim as well.[15] *See Bruce*, 617 A.2d at 995 (remanding for a

---

[15] We acknowledge that Mr. Shepherd may face difficulty in showing that, but for this alleged deficiency alone, there was a "reasonable probability that the outcome of the trial would have been different." *Cosio*, 927 A.2d at 1132. But because the prejudice inquiry for ineffectiveness claims must take into account the "cumulative effect" of counsel's errors, it would be premature for us to assess the prejudice prong before Mr. Shepherd's hearing. *Matthews v. United States*, 629 A.2d 1185, 1196 (D.C. 1993); *see also Asbell v. United States*, 436 A.2d 804, 807 (D.C. 1981) ("In determining whether trial counsel's performance blotted out the

hearing where the trial judge concluded a decision was tactical "without hearing any testimony from the attorney, and without [the movant's] new counsel having been accorded an opportunity to cross-examine"); *cf. Smith v. United States*, 608 A.2d 129, 132-33 (D.C. 1992) (remanding for a hearing where trial counsel's decision was "inexplicable on the record").

### 3. Mr. Shepherd's Additional Claims Regarding Impeachment of Mr. Dickerson

Mr. Shepherd additionally claims that trial counsel (1) failed to "utilize [Ms. Ingram's] two prior statements [saying Mr. Dickerson was not in the truck at the time of the shooting] to interrogate [Mr.] Dickerson regarding his involvement and his ability to witness the events as he described them,"[16] and (2) failed to impeach Mr. Dickerson's testimony that he did not hear an argument preceding the shot by using Mr. White's testimony to the contrary. Like the motions court, we discern no deficient performance by trial counsel on these grounds.

---

essence of a substantial defense we apply a totality of the circumstances test. . . . [E]ven though any one specific error by counsel may not constitute ineffective assistance, the totality of the omissions and errors may be sufficient." (internal quotation marks omitted)).

[16] Mr. Shepherd categorizes this as a claim regarding impeachment of Ms. Ingram, but then proceeds to discuss this claim regarding Mr. Dickerson.

Trial counsel could not impeach Mr. Dickerson with statements by Ms. Ingram of which he had no personal knowledge. *See Smith v. United States*, 583 A.2d 975, 983-84 (D.C. 1990) ("[A] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." (quoting Fed. R. Evid. 602)); *cf. Foreman v. United States*, 114 A.3d 631, 639 (D.C. 2015) (providing that a prior identification statement must come in through testimony of someone with personal knowledge of it being made). Nor could trial counsel have asked Mr. Dickerson about the truthfulness or credibility of Mr. White's testimony. *See Lloyd v. United States*, 64 A.3d 405, 412 (D.C. 2013) ("What is prohibited is seeking to have one witness comment or opine on the credibility of a prior witness, however phrased." (emphasis omitted) (internal quotation marks omitted)). An attorney's performance cannot be deficient due to a failure to take steps at trial that would not have been allowed as a matter of law. *Cf. Bell v. United States*, 677 A.2d 1044, 1048-49 (D.C. 1996) (rejecting a claim of deficient performance where the proposed objections were not legally meritorious).

In any event, Mr. Shepherd's counsel highlighted throughout the trial the substance of the contradictions that Mr. Shepherd now emphasizes. Trial counsel

cross-examined Mr. Dickerson about his location during the incident (he said he was sitting in a truck with Ms. Ingram, but Ms. Ingram had placed him outside the truck in prior statements) and his assertion (inconsistent with Ms. Ingram's *and* Mr. White's testimony) that he did not hear anyone arguing before the shooting. Trial counsel also emphasized in closing that Mr. Dickerson's testimony was "not corroboration at all" of Ms. Ingram's testimony, but rather they gave "two opposing stories that happen to end the same way." Mr. Shepherd admitted in his motion that counsel "duly impeached" Ms. Ingram as well. Thus the motions court did not abuse its discretion in denying a hearing on this claim.

### 4.     Trial Counsel's General Unreadiness for Trial

Lastly, we agree with the motions court's assessing as "vague and conclusory" Mr. Shepherd's claim[17] that his trial counsel was unprepared for trial by virtue of their unreadiness statements just prior to trial. Trial counsel informed the court of

---

[17] It is not clear to us that Mr. Shepherd intended this to be a standalone claim for relief as opposed to serving as contextual background. But since the motions court treated it as a standalone claim, we do the same.

Mr. Shepherd also argues for the first time before this court that the trial court erred by not granting trial counsel's motion for a continuance in full. But we decline to consider this non-IAC claim that was raised neither on direct appeal, *Head v. United States*, 489 A.2d 450, 451 (D.C. 1985), nor in Mr. Shepherd's § 23-110 motion, *see Sharps v. United States*, 246 A.3d 1141, 1159 (D.C. 2021).

their unreadiness after they received late disclosures from the government concerning the DNA evidence in the case, as well as miscellaneous documents from Mr. Shepherd's jail cell, medical and firearms examiner reports, and hours of recordings of jail calls. Counsel requested a one- or two-week continuance; the trial court ultimately gave them a day. But as the motions court observed, in his § 23-110 motion Mr. Shepherd failed to tie counsel's pretrial statements to any act or omission by counsel at trial; meanwhile, the record reflects that trial counsel vigorously argued that the DNA evidence was inconclusive but could be consistent with the defense theory—a point Mr. Shepherd appears to reinforce both in his § 23-110 motion and his brief to this court. The other last-minute revelations have no obvious bearing on the outcome of Mr. Shepherd's trial because they comprised information duplicative of the information the defense already had, information the government did not intend to use, or information the trial court otherwise determined was peripheral to Mr. Shepherd's defense. We thus cannot say that the motions court abused its discretion in concluding that this claim fell within an exception to the hearing requirement.

## II.    Conclusion

For the foregoing reasons, we vacate the motions court's denial of Mr.

Shepherd's § 23-110 motion and remand this case for further proceedings consistent with this opinion.

*So ordered.*